UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

United States of America,

v.

Maximilien de Hoop Cartier,

Defendant.

No. 24-cr-133 (MKV)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNTS THREE AND FOUR OF THE FOURTH SUPERSEDING INDICTMENT**

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.
565 Fifth Avenue
New York, NY 10017
(212) 856-9600 (telephone)


*Counsel for Defendant*
*Maximilien de Hoop Cartier*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................... 1

BACKGROUND ...................................................................................... 1

    I.     Mr. Cartier's Arrest.................................................................. 1

    II.    The Indictment ...................................................................... 1

    III.   Legal Standard for a Motion to Dismiss .................................. 4

ARGUMENT ........................................................................................... 4

    I.     The Bank Fraud Charge is Insufficient. .................................. 6

        A.    For Constitutional Reasons, the Government's Bank Fraud Charge Requires Greater Specificity. ...................................... 6

        B.    The Bank Fraud Statute Has Been Narrowed by *Ciminelli* and Other Supreme Court Precedent. .......................................... 7

        C.    Post-*Ciminelli*, the Government Must Specify the Traditional Property Interest Alleged to Be the Object of the Fraud. ........................................ 10

        D.    The Indictment Does Not Allege a Traditional Property Interest That Is the Object of the Scheme. .......................................... 11

            a.    To the Extent the Government's Theory Is That Merely Opening an Account is Enough to Establish a Property Interest, That Argument Fails, and Those Portions of Count Four Must Be Dismissed. ........... 12

            b.    To the Extent Count Four Implicates the Bank's Regulatory Interest, That Is Not a Cognizable Property Interest Under the Fraud Statutes. 20

            c.    The Indictment Does Not Allege That Obtaining Additional Banking Services and Reduced Fees Was the Object of the Fraud. .................. 20

    II.    Count Three Is Based on the Specified Unlawful Activity of the Faulty Count Four Bank Fraud and Should Also Be Dismissed. ............................................... 21

CONCLUSION ....................................................................................... 22

**Page(s)**

**Cases**

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) .................................................................. 4

*Ciminelli v. United States*, 598 U.S. 306 (2023) ....................................................... passim

*Cleveland v. United States*, 531 U.S. 12 (2000) ......................................................... 9, 20

*Kelly v. United States*, 590 U.S. 391 (2020) ...................................................... 6, 10, 21

*Kousisis v. United States*, 605 U.S. ----, 145 S. Ct. 1382, 1397 (2025) ....................... 11

*McNally v. United States*, 483 U.S. 350 (1987) ............................................................ 7, 9

*Murgio v. United States*, No. 24 Civ. 3650 (KPF), 2024 WL 4850812 (S.D.N.Y. Nov. 21, 2024) ............................................................................................................................. 14

*New York v. Tanella*, 374 F.3d 141 (2d Cir. 2004) ......................................................... 4

*Russell v. United States*, 369 U.S. 749 (1962) ......................................................... 7, 14

*Shaw v. United States*, 580 U.S. 63 (2016) ......................................................... 7, 9, 12, 13

*United States v. Aleynikov*, 676 F.3d 71 (2d Cir. 2012) .................................................. 4

*United States v. Alladawi*, 707 F. Supp. 3d 920 (C.D. Cal. 2023) .................................. 8

*United States v. An*, 733 F. Supp. 3d 77 (E.D.N.Y. 2024) ............................... 8, 14, 16, 17

*United States v. Aronov*, No. 19 Cr. 408 (MKB), 2024 WL 554577 (E.D.N.Y. Feb. 12, 2024) .. 10

*United States v. Bankman-Fried*, 680 F. Supp. 3d 289 (S.D.N.Y. 2023) ................... 14, 15

*United States v. Binday*, 804 F.3d 558 (2d Cir. 2015) ..................................................... 8

*United States v. Bouchard*, 828 F.3d 116 (2d Cir. 2016) ............................................... 19

*United States v. Braeger*, No. 21 Cr. 233 (LA), 2023 WL 2136722 (E.D. Wis. Feb. 21, 2023) .......................................................................................................................... 18, 19

*United States v. Calderon*, 944 F.3d 72 (2d Cir. 2019) .................................................. 7

*United States v. Constantinescu*, No. 22 Cr. 612, 2024 WL 1221579 (S.D. Tex. Mar. 20, 2024) .......................................................................................................................... 8, 11

*United States v. Davis*, 989 F.2d 244 (7th Cir. 1993) .................................................... 19

*United States v. Diab*, No. 21 Cr. 10250 (NMG), 2023 WL 11016350 (D. Mass. Dec. 30, 2023) ............................................................................................................................. 14

*United States v. Frias*, 521 F.3d 229 (2d Cir. 2008) ...................................................... 6

*United States v. Griffin*, 76 F.4th 724 (7th Cir. 2023) ................................................... 10

*United States v. Johnson*, No. 21 Cr. 428 (ER), 2023 WL 5632473 (S.D.N.Y. Aug. 31, 2023) .. 10

*United States v. Kwok*, No. 23 Cr. 118 (AT), 2024 WL 1407057 (S.D.N.Y. Apr. 2, 2024) ........ 14

*United States v. Lebedev*, 932 F.3d 40 (2d Cir. 2019) ................................................................ 13

*United States v. Motovich*, No. 21 Cr. 497 (WFK), 2024 WL 2943960 (E.D.N.Y. June 11, 2024) ................................................................................................................ 14, 16, 17

*United States v. Nejad*, No. 18 Cr. 224 (AJN), 2020 WL 883500 (S.D.N.Y. Feb. 24, 2020) ........ 8

*United States v. Percoco*, 13 F.4th 158 (2d Cir. 2021) ................................................................. 8

*United States v. Pierce*, 224 F.3d 158 (2d Cir. 2000) .................................................................. 21

*United States v. Poliak*, 823 F.2d 371 (9th Cir. 1987) ................................................................... 8

*United States v. Resendiz-Ponce*, 549 U.S. 102 (2007) ................................................................ 6

*United States v. Silver*, 203 F. Supp. 3d 370 (S.D.N.Y. 2016) .................................................... 21

*United States v. Smith*, No. 23 Cr. 110 (RJA) (MJR), 2024 WL 4545904 (W.D.N.Y. Aug. 29, 2024) .............................................................................................................................. 10

*United States v. Stavroulakis*, 952 F.2d 686 (2d Cir. 1992) ......................................................... 4

*United States v. Stringer*, 730 F.3d 120 (2d Cir. 2013) ................................................................. 6

*United States v. Yates*, 16 F.4th 256 (9th Cir. 2021) ..................................................................... 9

**Statutes**

18 U.S.C. § 1344 ............................................................................................................................. 7

18 U.S.C. § 1956 ........................................................................................................................... 21

**Other Authorities**

Memorandum from the Deputy Attorney General, *Ending Regulation by Prosecution* (Apr. 7, 2025), https://www.justice.gov/dag/media/1395781/dl?inline ............................................... 22

**Rules**

Fed. R. Crim. P. 12(b)(3)(B)(v) ..................................................................................................... 4

Fed. R. Crim. P. 7(c)(1) .................................................................................................................. 4

## PRELIMINARY STATEMENT

Defendant Maximilien de Hoop Cartier respectfully submits this memorandum of law in support of his motion to dismiss Counts Three and Four of the Fourth Superseding Indictment (the "Indictment" or "S4").

While the government's revisions to the Indictment in its fourth iteration addressed some of the legal flaws addressed in defendant's motion to dismiss certain counts of the second superseding indictment (ECF No. 87 ("Mot.")), rendering certain of defendant's arguments moot, a fatal flaw remains in the bank fraud count charged in Count Four.

Count Four is a legally defective bank fraud charge because the Indictment still does not allege a deprivation of a traditional property interest that was the object of the fraud, which is necessary to sustain a bank fraud charge after *Ciminelli*. Although the Indictment language was revised to provide more detail in the "to wit" clause about the nature of alleged false representations made, the property interest alleged is still insufficient as a matter of law.

Count Three, charging money laundering based on the "specified unlawful activity" of bank fraud, likewise must fail because it derives from an invalid theory of property in the Count Four bank fraud charge.

## BACKGROUND

### I. Mr. Cartier's Arrest

Mr. Cartier was arrested on a Complaint on February 23, 2024. (ECF No. 1. ("Compl.").) A grand jury returned a six-count indictment on March 7, 2024. (ECF No. 6.) Mr. Cartier has been in federal custody since February 2024 – more than 18 months.

### II. The Indictment

On May 2, 2024, a grand jury in the Southern District of New York returned an indictment naming Mr. Cartier and five others as defendants. (ECF No. 16.) Mr. Cartier moved

to dismiss certain counts of that indictment on April 25, 2025.  (ECF No. 87.)  On July 28, 2025, the grand jury returned the Fourth Superseding Indictment charging Mr. Cartier as the sole defendant.  (ECF No. 125.)

Count One charges that, from "May 2023 through in or about February 2024," Mr. Cartier engaged in a conspiracy to launder the proceeds of "some form of unlawful activity, to wit, narcotics trafficking" in violation of 18 U.S.C. § 1956(h).  (S4 ¶¶ 1-2.)[1]  Count Two charges Mr. Cartier with laundering the proceeds of narcotics trafficking, in violation of 18 U.S.C. § 1956(a)(2)(B)(i) and 2.  (S4 ¶ 3.)  Count Five charges Mr. Cartier with operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960.  (S4 ¶ 6.)  Mr. Cartier is not seeking to dismiss Counts One, Two, or Five.

The Indictment's two remaining counts, which are challenged in this motion, hinge upon alleged bank fraud.  Count Four charges Mr. Cartier with engaging in substantive bank fraud from "January 2020 through in or about February 2024," in violation of 18 U.S.C. § 1344.  (S4 ¶ 5.)  Count Four of the S4 includes a modified "to wit" clause enumerating four ways in which Mr. Cartier allegedly violated 18 U.S.C. § 1344 and indicates that Mr. Cartier is being charged with making false representations about the nature and purpose of his business operations in connection with opening bank accounts for the alleged object of transmitting funds derived from cryptocurrency trades on behalf of third parties.  (*See id*.)

Finally, the Count Three money laundering charge relies on the bank fraud count.  Count Three charges Mr. Cartier with laundering "the proceeds of specified unlawful activity, *to wit,*

---

[1] The allegation that Mr. Cartier conspired to launder narcotics proceeds for 9 months appears to arise from a government sting operation.  (*See* Compl. ¶¶ 13 n.3, 25.)

*bank fraud*," in violation of 18 U.S.C. § 1956, for the same period of time alleged in Count Four. (S4 ¶ 4 (emphasis added).)

This revised Indictment addressed some of the arguments raised in Mr. Cartier's motion to dismiss. Specifically, the bank fraud count of the Indictment (previously Count Three, now Count Four) was revised to add specifics of the false representations Mr. Cartier allegedly made to banks about the nature of the accounts and the business they would conduct. These revisions addressed the argument Mr. Cartier made in his first motion to dismiss, that the allegations of falsity were fatally flawed because the representations were literally true. (*See* Mot. at 26-29). Now, in the "to wit" clause of the Bank Fraud count, the Indictment alleges several ways in which the representations Mr. Cartier made to banks were purportedly false or fraudulent. The changes to the bank fraud count, however, do not adequately address Mr. Cartier's argument that the indictment fails to allege a traditional property interest that is cognizable under *Ciminelli* and its progeny.

The government's revised Count Four still does not make clear what property interest is the object of the fraud. To the extent the revised "to wit" clause can be interpreted to assert a property interest, the Count appears to assert three different theories of "property" as the object of the bank fraud. The principal one is that simply opening an account with a bank under false pretenses and then accessing or transferring the funds in that account deprives a bank of "property" because the bank is the custodian of the accounts. It also contemplates a property interest in banking services and fees, as well as in its compliance and due diligence programs. (*See* S4 ¶ 5.)

### III.     Legal Standard for a Motion to Dismiss

Federal Rule of Criminal Procedure 12 provides that a defendant may "raise by pretrial motion . . . a defect in the indictment or information, including[] . . . [the] failure to state an offense."  Fed. R. Crim. P. 12(b)(3)(B)(v); *see also United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012) ("A federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute.").  In ruling on a motion to dismiss an indictment, the court must assume that the indictment's allegations are true.  *See New York v. Tanella*, 374 F.3d 141, 148 (2d Cir. 2004).

To be sufficient, "[t]he indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted."  *Apprendi v. New Jersey*, 530 U.S. 466, 489 n.15 (2000) (quotation marks omitted).  The indictment must also contain "enough detail that [the defendant] may plead double jeopardy in a future prosecution based on the same set of events."  *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992).  *See also* Fed. R. Crim. P. 7(c)(1) (indictment must contain a "definite written statement of the essential facts constituting the offense charged").

## ARGUMENT
## Counts Three and Four Should be Dismissed

The bank fraud charge and the money laundering charge that is predicated on the bank fraud must be dismissed.  Mr. Cartier is alleged to have opened and used bank accounts while deceiving the banks about the fact that the accounts would be used for cryptocurrency transactions.  The Indictment charges this as a "fraud" upon the banks without clearly articulating what *traditional* property interest was the *object* of this purported fraud.

The Count or any portion of the Count must be dismissed if the Court finds that the government is relying on a right-to-control theory prohibited by *Ciminelli v. United States*, 598

U.S. 306 (2023). *See United States v. Pirro*, 212 F.3d 86, 88-89 & n.5 (2d Cir. 2000) (the court may dismiss "a portion of a count" even if it does not dismiss the whole count or indictment). The principal theory of bank fraud suggested by the Indictment is that Mr. Cartier made false representations to banks regarding the nature of the business that he intended to conduct through the bank accounts he opened and thereby was able to conduct transactions through those accounts. The premise behind the government's theory, then, is that the use of one's own bank account can constitute a sufficient deprivation of the "property" of the bank to constitute a scheme or artifice to defraud a bank or obtain its property; in other words, simply the use of the bank accounts to conduct transactions under false pretenses is a deprivation of the bank's property. That theory amounts to a deprivation of *information* that the bank would have wanted, and is not valid after *Ciminelli*. 598 U.S. 306 (2023) (deprivation of information is *not* a traditional property right and cannot sustain a viable charge under the federal fraud statutes).

Another theory suggested by the revised Indictment is that the object of the fraud was to open accounts and conduct transactions in the accounts while circumventing the banks' compliance and due diligence programs. (*See* S4 ¶ 5 (vi).) This is, likewise, only a deprivation of *information* the bank would have wanted to have, not a deprivation of a traditional property interest.

Neither of these theories in the Indictment alleges that Mr. Cartier acquired any property that belonged to a bank or caused a bank any loss. The Court can reject either of these theories as insufficient to allege a valid theory of property fraud, and therefore dismiss Count Four, or any portion of Count Four, as invalid.

Only one phrase in Count Four suggests a deprivation of the bank's traditional property – that Mr. Cartier submitted fake documents "to obtain additional banking services, such as wire

reporting, reduced fees, and other enhanced account services." However, the Indictment makes plain that obtaining additional services and reduced banking fees, if any, was not the object of the fraud, but was merely an "incidental byproduct" of Mr. Cartier's use of the accounts. *See Kelly v. United States*, 590 U.S. 391, 402 (2020).

Finally, Count Three must be dismissed because it relies on the validity of the bank fraud count.

## I. The Bank Fraud Charge is Insufficient.

### A. For Constitutional Reasons, the Government's Bank Fraud Charge Requires Greater Specificity.

Although "typically" it is enough for an indictment to track the statutory language along with providing approximate times and places, *United States v. Frias*, 521 F.3d 229, 235 (2d Cir. 2008), that is not always the case. The Supreme Court has long recognized that, to comply with the Fifth and Sixth Amendments of the Constitution, "some crimes must be charged with greater specificity than an indictment parroting a federal criminal statute's language." *United States v. Resendiz-Ponce*, 549 U.S. 102, 103 (2007) (*citing Russell v. United States*, 369 U.S. 749, 764-65 (1962)). The Second Circuit has likewise observed that, while not a universal requirement on all criminal statutes, "[t]he message of the Supreme Court's discussions in *Russell* and *Resendiz–Ponce* is that for certain statutes specification of how a particular element of a criminal charge will be met (as opposed to categorical recitation of the element) is of such importance to the fairness of the proceeding that it must be spelled out in the indictment . . . ." *United States v. Stringer*, 730 F.3d 120, 126 (2d Cir. 2013).

The need for greater specificity is at its strongest when the statute charged – or some element of that statute – contains "difficulties and uncertainties" that necessitate the court knowing what facts are alleged "so that it may decide whether they are sufficient in law to

support a conviction." *Russell*, 369 U.S at 768-69. Post-*Ciminelli*, the property element of a

bank fraud charge is an area that is fraught with potential pitfalls and this falls within that

bailiwick.

**B.  The Bank Fraud Statute Has Been Narrowed by *Ciminelli* and Other Supreme Court Precedent.**

The bank fraud statute, 18 U.S.C. § 1344, provides:

Whoever knowingly executes, or attempts to execute, a scheme or artifice –

(1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

The Supreme Court has long held that "property" is an essential element of federal fraud.

*See*, *e.g.*, *McNally v. United States*, 483 U.S. 350, 358 n.8 (1987) (confining the federal fraud

statutes to the "protect[ion of] individual property rights"), *superseded on other grounds by*

18 U.S.C. § 1346. Thus, with regard to the bank fraud statute, while Section 1344's first prong

does not even include the word "property" (but rather simply criminalizes a "scheme . . . to

defraud a financial institution"), the Supreme Court held in *Shaw v. United States* that to

establish bank fraud, "the scheme must be one to deceive the bank *and* deprive it of something of

value." 580 U.S. 63, 72 (2016) (emphasis in original). And as *Ciminelli* made clear, that

something-of-value must be a "traditional" property interest. 598 U.S. at 309.

Prior to the Supreme Court's decision in *Ciminelli*, the Second Circuit and district courts

in this Circuit gave "property" a broad reading and routinely held that property included

"'intangible' interests such as the right to control the use of one's assets," *United States v.*

*Calderon*, 944 F.3d 72, 88 (2d Cir. 2019), or "potentially valuable economic information" that is

"necessary to make discretionary economic decisions," *United States v. Percoco*, 13 F.4th 158, 170 (2d Cir. 2021) (citations omitted), *judgment vacated sub nom Kaloyeros v. United States*, 143 S. Ct. 2490 (Mem) (2023). *See also United States v. Binday*, 804 F.3d 558, 570 (2d Cir. 2015) ("[A] cognizable harm occurs when the defendant's scheme 'den[ies] the victim the right to control its assets by depriving it of information necessary to make discretionary economic decisions.'") (quoting *United States v. Rossomando*, 144 F.3d 197, 201 n.5 (2d Cir. 1998)), *abrogated by Ciminelli*, 598 U.S. 306; *United States v. Nejad*, No. 18 Cr. 224 (AJN), 2020 WL 883500, at *2 (S.D.N.Y. Feb. 24, 2020) (acknowledging applicability of the right-to-control theory to Section 1344(1)).

In *Ciminelli*, the Supreme Court put an end to that line of cases, refocusing lower courts on the nature of the property interest required to make out a crime under the federal fraud statutes. The Court held that a crime charged under the federal wire fraud statute[2] cannot depend upon the "right-to-control" theory of property. Rather, "property" alleged to be the object of the fraud scheme must be a "traditional property interest," and the "right to valuable economic

---

[2] Although *Ciminelli* addressed charges brought under the federal wire fraud statute, the Supreme Court plainly addressed its opinion to "the federal fraud statutes." 598 U.S. at 309. Moreover, since the decision was issued, district courts have generally treated and analyzed indictments brought under any of the federal fraud statutes (mail and wire fraud, bank fraud, securities fraud) for compliance with *Ciminelli*. *See, e.g., United States v. An*, 733 F. Supp. 3d 77, 91 (E.D.N.Y. 2024) (applying *Ciminelli*'s definition of property in analyzing motion to dismiss bank fraud counts); *United States v. Constantinescu*, No. 22 Cr. 612, 2024 WL 1221579, at *5-6 (S.D. Tex. Mar. 20, 2024) (analyzing securities fraud indictment under *Ciminelli*); *United States v. Alladawi*, 707 F. Supp. 3d 920, 925-26, 929 n.6 (C.D. Cal. 2023) (courts interpret the bank fraud statute and wire fraud statute by looking to caselaw interpreting either statute); *see also United States v. Poliak*, 823 F.2d 371, 372 (9th Cir. 1987) ("This reading of 18 U.S.C. § 1344 is supported by our readings of the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, on which the bank fraud statute is patterned.").

information needed to make discretionary economic decisions is *not* a traditional property interest." 598 U.S. at 309, 316 (emphasis added). This was a significant narrowing of the property element, and it resulted in the overturning of numerous criminal convictions in this Circuit. Yet that outcome was necessary, the Court explained, because "the right-to-control theory [had] vastly expand[ed] federal jurisdiction without statutory authorization." Moreover, by treating mere information as the protected property interest, "almost any deceptive act" could be deemed a criminal one by the government, which is not what Congress ever intended. *Id.* at 315; *see also United States v. Yates*, 16 F.4th 256, 265 (9th Cir. 2021) (vacating bank fraud convictions, and rejecting the government's theory that the deprivation of "accurate information," among other things, could constitute the requisite deprivation of "something of value").

*Ciminelli* is only the latest in a long line of Supreme Court decisions emphasizing the need for courts to interpret the federal fraud statutes *narrowly* – and holding the government to its burden of meeting essential elements of a property crime that are not apparent by reading the words of the statutes alone. *McNally* confined the federal fraud statutes to protecting individual property rights. 483 U.S. at 360. In *Cleveland v. United States*, the Court narrowed further, holding that a regulatory interest is not a cognizable property interest for the fraud statutes. 531 U.S. 12, 20, 24 (2000) (vacating a mail fraud conviction for making false statements in an application for a license to operate video poker machines, undoubtedly something of value, because the Court found that only a regulatory interest was implicated). In *Shaw*, consistent with these principles, the Supreme Court held that a charge under Section 1344(1) of the bank fraud statute must allege a scheme not only to deceive a bank but also to "deprive it of something of value." 580 U.S. at 72. In *Kelly*, the Court narrowed again, holding that the alleged deprivation

of property must be "an object" of the charged scheme and not merely an "incidental byproduct." 590 U.S. at 402. *Ciminelli* then went a step further, making clear that to be actionable, a scheme to defraud must be anchored in the deprivation of a victim's *traditional* property right, and not merely the right to information. 598 U.S. at 309.

### C. Post-*Ciminelli*, the Government Must Specify the Traditional Property Interest Alleged to Be the Object of the Fraud.

Where indictments clearly identify the traditional property interest that is the object of the fraud, *Ciminelli* is no bar to application of the bank fraud statute. Indeed, many indictments since *Ciminelli* have been found to allege an appropriate property interest where the indictment alleged a specific deprivation of property that courts can determine put it into the category of a traditional property interest. *See*, *e.g.*, *United States v. Griffin*, 76 F.4th 724, 738 (7th Cir. 2023) (indictment that explicitly alleged that conduct deprived "the SBA of loan guarantees and the millions of dollars the SBA lost paying out on these loan guarantees," identified a traditional property interest); *United States v. Aronov*, No. 19 Cr. 408 (MKB), 2024 WL 554577, at *3-4 (E.D.N.Y. Feb. 12, 2024) (finding indictment adequate where it alleged that obtaining real property was the object of the fraud); *United States v. Johnson*, No. 21 Cr. 428 (ER), 2023 WL 5632473, at *13 (S.D.N.Y. Aug. 31, 2023) (finding that indictment sufficiently alleged a traditional property-fraud theory where it alleged that defendants "conspired to defraud investors in the Silver Lease Program by . . . secretly misappropriating investors' money and silver"); *United States v. Smith*, No. 23 Cr. 110 (RJA) (MJR), 2024 WL 4545904, at *4 (W.D.N.Y. Aug. 29, 2024) (indictment sufficiently alleged the object of the fraud was money and property where it alleged that scheme was designed to trick and mislead financial lenders and SBA to approve loans), *report and recommendation adopted*, 2024 WL 4545170 (W.D.N.Y. Oct. 22, 2024).

Most recently, in *Kousisis v. United States*, the Supreme Court reaffirmed the principle that the federal fraud statutes "require[] that 'money or property' have been an object of the fraudster's scheme." 605 U.S. ----, 145 S. Ct. 1382, 1397 (2025) (quoting *Kelly*, 590 U.S. at 393). In that case, the Court rejected the defendants' argument that their convictions for inducing a state agency to award them contracts under materially false pretenses fell short of wire fraud because the agency had received the full economic benefit of its bargain. Although the defendants sought to characterize the charges against them as resting on a "repackag[ed]" right-to-control theory, the Supreme Court emphasized that the object of the defendants' deceit was money – millions of dollars paid pursuant to the contract – not the mere deprivation of information. *Id.* at 1398.

### D. The Indictment Does Not Allege a Traditional Property Interest That Is the Object of the Scheme.

In contrast to the cases discussed above, in which money or real property was obtained by fraud, here, the Indictment alleges no intended deprivation or acquisition of money or real estate, and no property obtained wrongfully by Mr. Cartier that was the object of the scheme. There is no theft, no loss, no appropriation of assets of another, and no deprivation of anything other than information the bank would have wanted to know. Because the Indictment fails to articulate a traditional property interest as the object of the scheme, and in light of the common sense indications that the government's theory is possibly one prohibited by *Ciminelli* – this Court should dismiss Count Four. *See Constantinescu*, 2024 WL 1221579, at *4-5 (dismissing securities fraud indictment where the court was unable to connect the alleged scheme to any deprivation of a traditional property interest and the allegations suggested the government might be relying on an impermissible right-to-control theory).

### a. To the Extent the Government's Theory Is That Merely Opening an Account is Enough to Establish a Property Interest, That Argument Fails, and Those Portions of Count Four Must Be Dismissed.

If the government's theory of property deprivation is that merely opening an account based on false statements about the nature of the business is a sufficient use of the bank's "property" to allege deprivation of a traditional property interest, there is no controlling authority for that proposition and it would be an unwarranted extension of existing law. Such a holding would sweep vast swaths of merely deceitful conduct into the reach of the federal bank fraud statute, contrary to decades of Supreme Court admonitions to avoid such an expansion.

No Supreme Court or Second Circuit case has so held. First, *Shaw* did not address such a situation. *Shaw* addressed a theft of a customer's funds from a bank account. The defendant argued that the bank fraud statute (Section 1344(1)) did not cover a scheme to deprive a bank of customer deposits because the property belonged to a bank customer, not the bank itself. *Shaw*, 580 U.S. at 66. The Supreme Court held that "the bank, too, had property rights in [the victim's] bank account." *Id.* Unlike in this case, though, there was no question of *whether* there was an actual property interest at stake – the defendant had stolen *money* from a customer's bank account and the only question was whether the bank, in addition to the customer, had property rights in the bank account which was in its custody. The Court answered that question in the affirmative, pointing out that a bank, by contract with the customer, ordinarily owns or has a possessory interest in the funds of its customers. The Court likened the bank's possessory interest in the funds to that of a bailee, where the bank "can assert the right to possess the deposited funds against all the world *but for the bailor*." *Id.* (emphasis added). Notably, the Supreme Court limited its holding to the facts before it:

> Hence, for purposes of the bank fraud statute, a scheme fraudulently to obtain funds from a bank depositor's account *normally* is also a scheme fraudulently to obtain property from a "financial institution," *at least where, as here, the*

12

> *defendant knew that the bank held the deposits, the funds obtained came from the deposit account, and the defendant misled the bank in order to obtain those funds.*

*Id.* at 67 (emphasis added). In other words, it was no stretch for the Court to find that the bank could assert a property interest as against the thief who stole money from its customer's account. But *Shaw* sheds no light on whether the Court would have held that the bank had a sufficient property interest to sustain a bank fraud charge, where, as here, no funds were stolen or obtained from the bank or a bank customer and the only potential "property" in question was the use of the bank's account to do business.[3]

Nor did *United States v. Lebedev* address the question presented in this motion to dismiss. 932 F.3d 40 (2d Cir. 2019), *abrogated in part by Ciminelli*, 598 U.S. 306. Lebedev was convicted under Section 1344(2) on a superficially similar fact pattern involving a cryptocurrency exchange that the bank was told was a collectibles business. On a sufficiency challenge after trial, the Second Circuit found that:

> Lebedev caused false information to be sent to financial institutions to disguise the fact that *their customers* were transacting business with an unregistered Bitcoin exchange. Moreover, he did so with the intent to obtain funds under those institutions' custody and control; namely, *funds in the customers' accounts*. In addition, by approving credit-card transactions, *banks advanced Coin.mx their own funds* that would later be paid back by customers.

*Id.* at 49 (emphasis added). Thus, *Lebedev*, like *Shaw*, addressed a situation in which there was no dispute about whether there was a property interest at stake – funds had been sent from customer accounts at the bank and the bank's own funds had been advanced in credit-card transactions. *Lebedev* likewise has no bearing on whether merely opening an account based on

---

[3] Indeed, the language in *Shaw* suggests that the Court would not have found such a property interest. The Court was careful to note that while there is a "property right" for the bank as bailee, it cannot assert that right against "the bailor (or, say, the bailor's authorized agent)". *Shaw*, 580 U.S. at 66.

false representations would by itself be a sufficient property deprivation to trigger bank fraud liability.[4]

Other district court cases arising after *Ciminelli* have not squarely addressed the question raised in this motion. We have, however, identified four cases in which district courts in this Circuit, post-*Ciminelli*, considered motions to dismiss bank fraud charges where the allegations *in part* concerned the opening of bank accounts. *See United States v. Bankman-Fried*, 680 F. Supp. 3d 289 (S.D.N.Y. 2023) (Kaplan, J.); *United States v. An*, 733 F. Supp. 3d 77 (E.D.N.Y. 2024) (Matsumoto, J.); *United States v. Motovich*, No. 21 Cr. 497 (WFK), 2024 WL 2943960 (E.D.N.Y. June 11, 2024) (Kuntz, J.); and *United States v. Kwok*, No. 23 Cr. 118 (AT), 2024 WL 1407057 (S.D.N.Y. Apr. 2, 2024) (Torres, J.). The courts in those cases denied the motions to dismiss, but for reasons that are easily distinguishable and instructive. Indeed, close consideration of those decisions and the underlying indictments those courts considered supports dismissal here.[5]

---

[4] Other courts have recognized the limitations of *Lebedev*. *See United States v. Diab*, No. 21 Cr. 10250 (NMG), 2023 WL 11016350, at *15 (D. Mass. Dec. 30, 2023), *report and recommendation adopted*, 728 F. Supp. 3d 158 (D. Mass. 2024) (discussing *Lebedev* as a case "in which a cryptocurrency exchange created a sham merchant for the purpose of tricking banks into processing credit card transactions for unauthorized cryptocurrency purchases" and "the credit card transactions were, in effect, extensions of credit involving bank property"); *Murgio v. United States*, No. 24 Civ. 3650 (KPF), 2024 WL 4850812, at *13 (S.D.N.Y. Nov. 21, 2024) (same).

[5] It bears emphasis that to the extent any district courts have reflexively denied motions to dismiss without exacting consideration of whether a sufficient "traditional property interest" has been alleged in an indictment in the context of opening bank accounts, such an approach is no longer acceptable after *Ciminelli*. *Ciminelli* makes clear that an essential element of a bank fraud crime is the sufficient allegation of a traditional property interest that was an object of the fraud. 598 U.S. at 390. And *Russell* makes clear that defendants and courts should not have to speculate or guess at the government's theory for making out that essential element. 369 U.S. at 770. That is the government's burden, as it must be, and failure to meet that burden requires dismissal of the charge.

First, the indictments considered in *Bankman-Fried*, *An*, *Motovich*, and *Kwok* were all lengthy speaking indictments with overviews and detailed sections outlining the bank fraud counts, making clear that in those four cases the alleged bank fraud conduct was both different and substantially more involved. *See Bankman-Fried*, No. 22 Cr. 673 (LAK) (S.D.N.Y.), ECF No. 115 ¶¶ 1-9, 14-27, 85-87 (superseding indictment was 39 pages); *An*, No. 22 Cr. 460 (KAM) (S.D.N.Y.), ECF No. 9 ¶¶ 82-85 (superseding indictment was 43 pages); *Motovich*, No. 21 Cr. 497 (WFK) (E.D.N.Y.) ECF No. 19 ¶¶ 11-22, 30-33 (indictment was 20 pages); *Kwok*, No. 23 Cr. 118 (AT) (S.D.N.Y.) ECF No. 215 ¶¶ 3-4, 7-8, 21-23, 28-30 (superseding indictment was 49 pages). In *Bankman-Fried*, while the indictment included allegations of false statements made in opening bank accounts, the core conduct charged was a scheme to "steal" customer deposits belonging to FTX customers.[6] That fact pattern fell squarely within what the Supreme Court in *Shaw* has already found to be adequate, and Judge Kaplan denied the motion to dismiss on that basis. *Bankman-Fried*, 680 F. Supp. 3d at 305. Similarly in *Kwok* – which simply cites and quotes from *Bankman-Fried* in a cursory discussion – the underlying indictment and briefing show that there were detailed allegations in the indictment that went well beyond the claim that an account was opened based on false representations about the nature of the account. *See Kwok*, No. 23 Cr. 118 (AT) (S.D.N.Y.) Gov. Mem., ECF No. 242 at 44-45; Indictment, ECF No. 215 ¶¶ 27-30, 36-40.

*Motovich*, too, charged a fraud scheme that went beyond alleging misrepresentations of the nature of the business in opening bank accounts. There, the indictment alleged that Motovich had made "numerous materially false representations" to banks all throughout his dealings with

---

[6] *Bankman-Fried*, No. 22 Cr. 673 (LAK) (S.D.N.Y.) Superseding Indictment, ECF No. 115 ¶¶ 1, 4.

them – including by falsely representing the identity of the accounts' beneficial owner; by actively concealing his control of the bank accounts; by making millions of dollars in personal luxury purchases using money in the accounts; and by continuously falsifying the business rationales for transactions. *Motovich*, 2024 WL 2943960, at *3; *Motovich*, No. 21 Cr. 497 (WFK) (E.D.N.Y.) Indictment, ECF No. 19 ¶¶ 11-22.

Finally, in *An*, the alleged bank fraud conduct was likewise extensive and included allegations that the defendants had worked with more than 50 third parties to trick banks into processing wires of money under false pretenses, by continuously lying about the purposes of the particular transactions. *See An*, No. 22 Cr. 460 (KAM) (E.D.N.Y.) Indictment, ECF No. 9 ¶ 84.

All four of those indictments are therefore distinguishable.

The *Motovich* and *An* decisions are instructive for another reason: they underscore (i) the significant gray area surrounding what property, if any, a bank is deprived of when the opening of a bank account involves some measure of deceit by the account opener, and (ii) the difficulty that courts have identifying the property theory when the government fails to articulate one, even in the case of a more fulsome speaking indictment.

In *An*, where the indictment failed to specifically allege a bank property deprivation, the court engaged in a speculative leap to infer that the alleged harm to banks was the "deprivation of deposited funds in accounts held by the victim banks." 733 F. Supp. 3d at 91-92. In drawing that inference, the court cited to a paragraph of the indictment (paragraph 82) that made no reference whatsoever to the bank's deprivation of deposited funds but rather alleged that defendants had found ways to evade Chinese law and U.S. AML controls in order to "enjoy continued access to funds in U.S.-based bank accounts." *An*, No. 22 Cr. 460 (KAM) (E.D.N.Y.) Indictment, ECF No. 9 ¶ 82. It is unclear how the court extrapolated from paragraph 82 to reach

the inferred property interest.  Continuing down this path of conjecture, the court then assessed the inferred property theory as being legally sufficient on the ground that bank agreements with customers "*ordinarily*" make banks the "owner of the funds," 733 F. Supp. 3d at 92 (emphasis added) (quoting *Shaw*, 580 U.S. at 66), and because "*presumably*" banks would have profited from defendants or held some possessory interest, *id.* at 94 (emphasis added).  That reasoning is unpersuasive.  There is an obvious constitutional problem when courts are made to go outside of an indictment, and to speculate about what banks "normally" and "ordinarily" and "presumably" do in assessing the adequacy of an indictment.  It exposes defendants to all of the dangers of which *Russell* warned and illustrates why courts cannot properly do their job of assessing indictments and protecting defendants' constitutional rights where essential elements have not been sufficiently alleged.

*Motovich* also highlights the murkiness and uncertainty surrounding if and when a bank is deprived of property on the basis of an accountholder's transactions in his own account. There, the defendant argued that a bank fraud charge could never be predicated on allegations that he had stolen from his own bank accounts (*i.e.*, by withdrawing his own money).  *Motovich*, 2024 WL 2943960, at *4.  The court dismissed that argument in a summary discussion that incorrectly cited *Shaw* for the proposition that all customer bank account funds are always bank property.  As discussed, *Shaw* never went nearly that far.  The *Motovich* decision even went on to cite the "normally" and "generally" language in *Shaw* and *An* – which should have raised the court's antennae about whether *Motovich* presented exactly the abnormal case one might posit – but without reconciling those caveats with its holding.

In sum, there is no binding precedent that prevents this Court from dismissing the

improper theory alleged in Count Four.[7]  Nor is there any persuasive reason.  Because of the

more robust indictments in *Bankman-Fried*, *An*, *Motovich*, and *Kwok*, we do not read any of

those decisions as holding that the mere allegation that a defendant provided false information to

open and use a bank account suffices to allege the deprivation of a bank property right.

However, should those cases imply as much, their analysis is flawed and should not be followed.

A persuasive opinion addressing a more similar factual scenario is instead *United*

*States v. Braeger*, No. 21 Cr. 233 (LA), 2023 WL 2136722 (E.D. Wis. Feb. 21, 2023).  The

*Braeger* court found that the indictment did *not* allege facts amounting to bank fraud under

1344(2) where it was alleged:

> that defendant made a false representation to BMO Harris when he opened the
> account.  One can also infer that but for this false representation, defendant would
> not have been able to open the business account into which he deposited J.P.'s
> funds, which he later withdrew for his own use.

*Id.* at 6.  The false representation alleged was about how he would use his account.  Although the

court acknowledged that the false representation was a "but-for cause" of the defendant's ability

to open the business account from which he later withdrew the problematic funds, it found that

"not every but-for cause will suffice . . . it cannot be inferred that defendant's false statement in

setting up the account induced the bank to later disburse the funds alleged in counts one, two,

and three."  *Id.* (citing *Loughrin*, 573 U.S. at 362).  Critically, the court held, the statute

"demands that the defendant's false statement is the mechanism naturally inducing a bank . . . to

---

[7] The Second Circuit has not had occasion yet to address the issues raised in the district courts'
opinions on bank fraud in the *Bankman-Fried*, *Motovich*, *An* or *Kwok* cases.  *Bankman-Fried* did
not raise this issue on appeal after he was convicted at trial.  The *An* defendants pleaded guilty
before trial.  Neither Motovich nor Kwok has yet been sentenced, so their convictions are not yet
final.

part with its money." *Id.* (quoting *Loughrin*, 573 U.S. at 364-65). Accordingly, the court dismissed the bank fraud counts of the indictment.

*Braeger*, unlike *Motovich*, *Bankman-Fried*, *An*, or *Kwok*, is on all fours with the Indictment here. As in *Braeger*, false statements about the purpose of the account to the bank cannot be said to induce the bank to part with its money. And the opening and use of an account, without more, cannot be recognized as a traditional property interest of a bank after *Ciminelli*. Any other conclusion would fly in the face of forty years of judicial efforts to cabin the aggressive use of the federal fraud statutes to reach conduct that is merely deceitful but does not have as its object a deprivation of property in the traditional sense.

This Court should also look to other decisions where the government's theory of bank fraud was too tenuous to support a conviction. *See United States v. Davis*, 989 F.2d 244, 246-47 (7th Cir. 1993) (Posner, J.) (directing acquittal on bank fraud charge where defendant had opened a bank account based on false representation that business was real and stating, "only in the most literal, hypertechnical sense could he be said to have schemed to defraud the bank of money or other property belonging to it. . . . the false representations made by Davis in establishing the account were done in order to get the proceeds of the [fraudulently-obtained] check from the bank. So there is a sense in which the bank was 'defrauded' of the amount that Davis withdrew from the account. But it is not the sense of the bank fraud statute . . . "); *see also United States v. Bouchard*, 828 F.3d 116, 124-26 (2d Cir. 2016) (finding evidence insufficient to sustain a bank fraud conviction under Section 1344(1) when there was no evidence that defendant intended to defraud a financial institution).

### b. To the Extent Count Four Implicates the Bank's Regulatory Interest, That Is Not a Cognizable Property Interest Under the Fraud Statutes.

Yet another potential theory of bank fraud that the government has added to the Indictment is that Mr. Cartier "made false representations and omitted material facts" in his dealings with banks "to circumvent compliance, due diligence, and risk-based anti-money laundering systems and monitoring programs of those banks" in connection with opening accounts and sending and receiving monies. (S4 ¶ 5(iv).) This theory also fails to identify a cognizable property interest under *Ciminelli*, much less allege that a bank was deprived of that interest. The import of this new allegation is that by providing allegedly false or incomplete information to "certain banks," Mr. Cartier deprived those banks of information they might have used in deciding what compliance measures to take or which internal controls to apply. Even if true, this supposed deprivation of information implicates only the "right to valuable economic information needed to make discretionary economic decisions" – exactly what the *Ciminelli* Court said is *not* a traditional property interest. *See* 598 U.S. at 309, 216. The banks' interest in allowing only customers who meet its due diligence criteria to open accounts is akin to a regulatory interest, which is not an adequate property interest under the fraud statutes. *See Cleveland*, 531 U.S. at 20, 24. The bank fraud count cannot rest on this theory, and to hold that it does would be a troubling expansion of the bank fraud statute's reach.

### c. The Indictment Does Not Allege That Obtaining Additional Banking Services and Reduced Fees Was the Object of the Fraud.

The government further supplemented Count Four with the allegation that Mr. Cartier "submitted fake documents to certain banks regarding his business operations . . . to obtain additional banking services, such as wire reporting, reduced fees, and other enhanced account services." (S4 ¶ 5(iii).) As the face of the Indictment makes clear, however, the crux of the alleged scheme was to obtain access to U.S. bank accounts in order to operate a money

transmitting business that would "receiv[e] and send[] hundreds of millions of dollars." (S4 ¶ 5.) By contrast, the services and reduced fees alleged in (iii) of Count Four played only a "bit part" in the fraud and thus constitute only an "incidental byproduct of the scheme." *Kelly*, 590 U.S. at 402. As the Supreme Court stated in *Kelly*, allowing such incidental byproducts to convert any small instance of deceit into a federal fraud would result in "a sweeping expansion of federal criminal jurisdiction." *Id.* at 403 (quoting *Cleveland*, 531 U.S. at 24). Accordingly, this allegation is also insufficient to sustain the bank fraud count.

For these reasons, the Court should dismiss Count Four. Alternatively, at minimum, the Court should dismiss those allegations in subparagraphs (i), (ii), and (iv) of Count Four that do not implicate a traditional property interest under the fraud statutes.

## II. Count Three Is Based on the Specified Unlawful Activity of the Faulty Count Four Bank Fraud and Should Also Be Dismissed.

The statute charged in Count Three, the money laundering statute, 18 U.S.C. § 1956, requires a showing of an underlying "specified unlawful activity" as an element of the offense. 18 U.S.C. §§ 1956(a)(1), (2). Count Three must be dismissed because these Counts depend on the "specified unlawful activity" of the bank fraud alleged in Count Four, which is fatally flawed. Because the bank fraud charge should be dismissed, for the reasons stated above, and because Count Three cannot stand in the absence of the bank fraud count, it too should be dismissed. *See United States v. Pierce*, 224 F.3d 158, 160 (2d Cir. 2000) (reversing judgment of conviction on the money laundering count based on a finding that the government failed to establish a fact necessary to prove wire fraud, which was the specified unlawful activity underlying the money laundering count); *United States v. Silver*, 203 F. Supp. 3d 370, 376

(S.D.N.Y. 2016) (stating that reversal of a money laundering count would necessarily follow the reversal of the count constituting the specified unlawful activity).[8]

## CONCLUSION

For these reasons, the Court should dismiss Counts Three and Four of the Superseding Indictment.

Dated:      New York, New York          Respectfully submitted,
             September 3, 2025

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

By: /s/ *Kathleen E. Cassidy*

Kathleen E. Cassidy
Lisa Zornberg
Kayasha B. Lyons
Chloe Lewis

565 Fifth Avenue
New York, NY 10017
(212) 856-9600

*Counsel for Defendant*
*Maximilien de Hoop Cartier*

---

[8] It must also be noted that the government's apparent position that opening a bank account for purposes of transacting in cryptocurrency while lying to the bank is necessarily a bank fraud, and that then – *ipso facto* – any transaction involving those funds becomes a money laundering transaction involving the "proceeds" of that "fraud," reflects a draconian approach to the cryptocurrency industry that is difficult to square with the recent memo from the Department of Justice about the shift in DOJ policy towards crypto enforcement. Memorandum from the Deputy Attorney General, *Ending Regulation by Prosecution* (Apr. 7, 2025), https://www.justice.gov/dag/media/1395781/dl?inline. The DOJ Memorandum emphasized that DOJ would shift away from using the criminal law to impose limits on the digital assets industry and instead regulate crypto outside the punitive criminal justice framework. *Id.* at 1 ("Department will no longer target virtual currency exchanges, mixing and tumbling services, and offline wallets for the acts of their end users.").