**From:**    felipe estrada <███████@hotmail.com>
**To:**    "███@vcinnovatedtechnologies.com" <███@vcinnovatedtechnologies.com>
**Subject:**    Fwd: Contrato Softmill y AZ Big data
**Sent:**    Wednesday, May 27, 2020 3:49:32 PM
Contrato BDT - DS 223.pdf
Contrato BDT - DAZ 221.pdf

Enviado desde Outlook Mobile

---

**From:** Big Data Technology ███████@gmail.com>
**Sent:** Tuesday, May 26, 2020 11:18:49 PM
**To:** ███████@hotmail.com <███████@hotmail.com>
**Subject:** Contrato Softmill y AZ

USAO_REL_0000234375

# BIG DATA TECHNOLOGY S.A.S

# SOFTMILL LLC

### CONTRATO DE PRESTACION DE SERVICIOS INFORMATICOS

Entre los suscritos a saber: **FELIPE ESTRADA ECHEVERRY,** mayor de edad, identificado con la cedula de ciudadanía numero ██████████ expedida en Envigado, en su calidad de Representante Legal de la sociedad **BIG DATA TECHNOLOGY SAS**, identificada con NIT **901.340.483-0**, quien para los efectos del presente contrato se denominara **EL VENDEDOR**, y ███████████████, mayor de edad, identificado con pasaporte número ██████████ expedido en **ARGENTINA**, en su calidad de **REPRESENTANTE LEGAL** de la sociedad **SOFTMILL LLC,** identificada con EIN (Employer Identification Number) 101-1954611 con domicilio en 4490 Sw 136th Ave, Miramar FL 33027, Broward County, FL, en los Estados Unidos de América U.S.A , quien para efectos de este Contrato se denominará **EL COMPRADOR**, han acordado celebrar el presente Contrato de prestación de servicios informáticos, según las siguientes clausulas:

### CLAUSULAS

**CLAUSULA PRIMERA. OBJETO:** El objeto del presente contrato consiste en el diseño, instalación y puesta en marcha de la administración de bienes tangibles e intangibles, administración de espacios de almacenamiento masivo en la nube y la administración de activos intangibles no relacionados con la propiedad intelectual. De igual manera, se podrán prestar servicios de arrendamiento y/o venta de software que llegare a solicitar EL COMPRADOR. El servicio incluye Análisis SEO y SEM, Publicidad Google Adwords para CPC y CPA, Desarrollo PHP - HTML - CSS – Bootstrap, integración de aplicación estándar (CRM, ERP, HR), Bases de Datos: Oracle – Postgres - MySQL, Servicio de mantenimiento Evolutivo, correctivo y operativo de aplicación y sistema, Desarrollo Móvil (Android e iOS), campañas Facebook ADS, diseño de arquitectura y sistema de software, acceso al software D.LINE DE SEGURIDAD INFORMATICA, con diez (10) usuarios de acceso concurrente y quince (15) usuarios identificados, entre otros. De igual manera, dentro de estas actividades se utilizará el software D.LINE DE SEGURIDAD INFORMATICA, que incluye tres módulos robustos para digitalización de archivos, administración de correspondencia y planeación, ejecución y control de flujos de trabajo informáticos. Además, el software D.LINE DE SEGURIDAD INFORMATICA, tiene incorporados los plugins y scripts, para una mayor versatilidad y eficiencia del aplicativo. Incluye también el presente contrato 12 horas de capacitación a cargo del Vendedor en favor del Comprador, la cual podrán ser realizadas de forma presencial en las oficinas del Vendedor o virtualmente a través de videoconferencias. **Parágrafo 1: Características**. Las características de los detalles de los servicios a prestar están descritas en la PROPUESTA COMERCIAL No. DS 223 del 20 marzo de 2020, revisada y aprobada por EL COMPRADOR y la cual se considera incorporada integralmente al presente Contrato, **Parágrafo 2: Proceso de implementación**. El acompañamiento técnico de la prestación de los servicios e implementación se harán por el VENDEDOR, de forma presencial o virtual, a través de videoconferencias. **Parágrafo 3: Elementos que cubre el servicio:** incluye el soporte lógico con manuales, fichas técnicas y documentación comercial que son de propiedad de los autores y que le conceden al COMPRADOR por medio del presente documento una garantía que los

USAO_REL_0000234376

procesos se llevaran dentro de los tiempos estipulados. **Parágrafo 4. Restricciones De Reproducción:** Los servicios objeto de este contrato está protegidos por las leyes de propiedad intelectual nacional e internacional, por tanto, EL COMPRADOR exclusivamente podrá hacer copia de seguridad de sus datos, siendo esta su responsabilidad desde el primer día de ejecución del contrato, siguiendo las instrucciones impartidas por el VENDEDOR, de sus manuales o de la capacitación recibida. **Parágrafo 5: Comunicación De Las Restricciones Por El Comprador:** EL COMPRADOR comunicara las condiciones de este acuerdo a todo empleado, bajo su dirección y/o control que haya de utilizar estos servicios. **Parágrafo 6: Uso No Autorizado de los sistemas informáticos:** EL COMPRADOR se compromete a tomar las medidas pertinentes para asegurar que las personas empleadas o bajo su dirección y control cumplan las condiciones de este acuerdo de prestación de servicios, incluyendo, sin restricciones, el no permitir deliberadamente a nadie utilizar ninguna parte del software autorizado con la finalidad de copiar, distribuir, descifrar o alterar su código fuente. Si EL COMPRADOR tuviera conocimiento de que el software se estuviera usando por tales personas de modo no autorizado por este acuerdo, deberá usar todos los medios a su alcance para que cese inmediatamente tal uso, asumiendo la responsabilidad legal, civil y pecuniaria de tal hecho. EL COMPRADOR deberá notificar por escrito al VENDEDOR, toda violación de seguridad identificada por él, en un lapso no superior a dos (2) días. **Parágrafo 7: Software De Terceros:** La utilización de otros productos o tecnologías complementarios como: bases de datos, navegadores, sistemas operativos, anti -virus, parches y demás, serán responsabilidad de EL COMPRADOR y este deberá notificar al VENDEDOR, cualquier utilización de software ajeno que se ejecute especialmente en el servidor o computador que aloja este servicio y/o producto. **Parágrafo 8: Garantía De Funcionamiento:** EL VENDEDOR como prestador de los servicios anteriormente descritos, garantiza el correcto funcionamiento y de soluciones requeridas por el COMPRADOR, mas no de la infraestructura computacional y de comunicaciones. EL COMPRADOR debe contar con condiciones eléctricas, de comunicaciones, ambientales e informáticas ideales para operar equipos de cómputo y redes de dates TCP-IP. **Parágrafo 9: Hardware Y Software Del Servidor.** El software garantiza su operación en computadoras con arquitectura INTEL o AMD de Ultima generación tecnológica, los cuales posean un espacio en disco duro libre de 10 TB, 1 TB en memoria principal, tarjeta de red, que funcionen y que operen sobre el sistema operativo LINUX Versiones RED HAT y/o SUSE y sus derivados, Windows XP, 2000, 2003 server, servidor Web Apache versión 2.0.58 y Base de Dates ORACLE, SQL SERVER, y POSTGRESQL. Las garantías de los servicios descritos en el contrato solo se cubren sobre este tipo de instalaciones. EL COMPRADOR debe contar con un sistema de poder ininterrumpido o U.P.S, conectado al equipo de cómputo que almacene los datos y las imágenes para proteger la integridad de la aplicación. Todas las licencias adicionales y que corresponden a otros fabricantes, deben ser adquiridas o dispuestas por EL COMPRADOR bajo su responsabilidad. Mientras que EL VENDEDOR, coloca a disposición sus recursos humanos y técnicos para garantizar la confianza y el respaldo de estos servicios y/o productos, si y solo si las condiciones de instalación tienen las características aquí descritas. **Parágrafo 10: Tiempo De Garantía.** Una vez hecho la prestación de los servicios se estipula una garantía de funcionamiento de seis (6) meses, tiempo en el cual, si el cliente certifica algún defecto o error, deberá notificarla por escrito en un lapso no superior a cinco (5) días o a través del sistema de mesa de ayuda que proporciona EL VENDEDOR, indicando el tipo de anomalía, hora, fecha y operación realizada. **Parágrafo 11. Excepciones De La Garantía.** EL VENDEDOR, no se responsabilizará de los daños directos o indirectos, consecuentes de la utilización o imposibilidad de utilización de las aplicaciones, incluida la perdida de datos que se produjeren con ocasión o en relación con el uso de algún software o aplicación tecnológica. La garantía en ningún caso cubre problemas eléctricos, ambientales o la realización de copias

USAO_REL_0000234377

de seguridad de datos o imágenes. La garantía aplica exclusivamente a problemas o fallas en los servicios, que en caso de contener los servicios o aplicaciones algún error de este tipo, EL VENDEDOR, se compromete a solucionarlo durante la vigencia de la garantía, previa notificación del cliente en un periodo no superior a tres (3) días hábiles. **Parágrafo 12, Exclusión De Responsabilidad:** EL VENDEDOR, no concede ninguna otra garantía de servicios tecnológicos y queda expresamente excluida toda responsabilidad por infracción de otra garantía a condición, dado que EL VENDEDOR, no responderá por negociaciones o actuaciones técnicas efectuadas por personas no autorizadas por el prestador del servicio que puedan afectar de manera directa o indirecta cualquiera de los componentes necesarios para el correcto funcionamiento de los servicios prestamos o desarrollos tecnológicos efectuados. El cliente debe reportar por escrito con al menos cinco (5) días de antelación, cualquier modificación, actualización o reforma al equipo de cómputo o servidor donde EL VENDEDOR este efectuando la prestación de los servicios tecnológicos, para evaluar la pertinencia y las implicaciones de dichos eventos. No informar de estas actividades puede anular la garantía. **Parágrafo 13: Criterio De Selección del Software Por El Comprador:** EL COMPRADOR es el único responsable de la selección y criterio de idoneidad en la elección de algún software, en ese sentido se entiende que EL COMPRADOR comparte la visión de los desarrolladores y/o autores para obtener los resultados esperados. **Parágrafo 14. Asistencia Técnica**: Durante el periodo de garantía del servicio y en caso de existir algún problema y error de software o funcionamiento de los aplicativos, que imposibilite al cliente realizar sus labores (digitalización, captura, consulta, registro o procesamiento de datos, entre otros relacionados), deberá reportarlo a través del sistema de mesa de ayuda de EL VENDEDOR, o comunicarse por las líneas telefónicas para brindar asistencia técnica.

**CLAUSULA SEGUNDA. VALOR DEL CONTRATO y FORMA DE PAGO:** El valor total del presente Contrato se pacta en la suma de **CUATROCIENTOS QUINCE MIL SETECIENTOS SETENTA Y NUEVE dólares americanos (USD $415.779),** que **EL COMPRADOR, SOFTMILL LLC** cancelara al VENDEDOR con abonos periódicos a partir de la firma del presente contrato durante **3 MESES** hasta completar el valor total del presente contrato. **Parágrafo 1.** La prestación de estos servicios y/o la venta de este servicio intangible está exento de IVA de acuerdo con la legislación vigente en Colombia, en la cual está expresamente aclarado el total del contrato y previa presentación de las respectivas facturas por parte del VENDEDOR.

**CLAUSULA TERCERA. PLAZO DE EJECUCION:** El plazo del presente Contrato será por **TRES (3) MESES**, contados a partir de la suscripción y legalización del mismo.

**CLAUSULA CUARTA. OBLIGACIONES DEL VENDEDOR:** EL VENDEDOR se obliga para con EL COMPRADOR a: a) Cumplir con el objeto del Contrato, b) Cumplir con las obligaciones expuestas en la **Propuesta Comercial No DS-223 del 20 Marzo de 2020,** y en el presente Contrato, con calidad y responsabilidad de las labores a realizar, c) Realizar la capacitación al personal o personas a cargo del COMPRADOR para que se puedan realizar sus actividades y que estén directa o indirectamente relacionados con los servicios tecnológicos prestados, en todos sus o componentes, en la ciudad donde el VENDEDOR notifique al COMPRADOR para una (1) única vez durante las sesiones fijadas dentro del cronograma de capacitación definido y por el tiempo establecido en la cláusula primera del presente contrato. Procesos posteriores relacionadas con reentrenamientos serán facturados por el VENDEDOR previa aprobación del COMPRADOR, d) Instalar los softwares requeridos y capacitar a los usuarios, según cronograma. e) Entregar los software debidamente instalados y en operación en un servidor del COMPRADOR, f) Entregar los manuales de instalación y manuales de usuario de los software, en caso tal, anexando el CD de instalación del Software, g) Prestar acompañamiento

USAO_REL_0000234378

en las actividades de implementación de los software, a través de un Ingeniero de Soporte del VENDEDOR en sesiones presenciales o virtuales con el personal asignado para el COMPRADOR, para definir y ajustar la configuración general del sistema (creación de sedes, cargos, dependencias, etc.), parametrizar el formulario de radicación de correspondencia recibida, despachada e interna, diseñar y crear las plantillas asociadas a una (1) dependencia para el maneja de los documentos correspondientes en el módulo de archivo, así coma la creación en el software de las Tablas de Retención Documental. En el módulo de Flujo de Trabajo el VENDEDOR se compromete a colaborar con la revisión de diagramas de base, la ejecución, prueba y validación de un (1) circuito de trabajo que sirva como base para la replicación de las subsiguientes que se creen por parte del COMPRADOR. En todo caso, EL VENDEDOR brindara el soporte y acompañamiento en la creación de una primera instancia de aplicación tanto a nivel de correspondencia, archivo como de flujo de trabajo y es responsabilidad de EL COMPRADOR extender dicha funcionalidad a toda la organización de acuerdo con su propia disponibilidad de recursos (tiempo, personas, etc.) h) Guardar reserva sobre la información interna de EL COMPRADOR, i) Entregar las actualizaciones que sean liberadas dentro del término del presente Contrato; j) Suministrar el personal idóneo para el desarrollo de las labores propias del contrato y mantenerlo capacitado en la funcionalidad de la solución y en los aspectos legales y conceptuales relacionados. k) Suministrar la documentación correspondiente. 1) Asignar un ingeniero como interlocutor para el seguimiento y supervisión de la ejecución del Contrato, l) Cumplir con los tiempos de respuesta descritos en la cláusula objeto del Contrato, m) cumplir con los tiempos establecidos en el cronograma de instalación y capacitación el cual es entregado por EL VENDEDOR y que se anexa a este Contrato como parte integral del mismo, n) Todas las demás obligaciones establecidas en este Contrato.

**CLAUSULA QUINTA. OBLIGACIONES DE EL COMPRADOR:** EL COMPRADOR se obliga con EL VENDEDOR a: a) Pagar el precio del contrato en los términos pactados, b) Cumplir con las obligaciones expuestas en el presente Contrato, con calidad y responsabilidad de las labores a realizar, c) velar por el adecuado uso de las licencias de los productos de software en los términos del presente contrato, d) Todas las demás obligaciones establecidas en este Contrato.

**CLAUSULA SEXTA. PERIODO DE GARANTIA:** Sin perjuicios de las garantías pactadas en el presente contrato, EL VENDEDOR ofrece al cliente garantía por un periodo de seis (6) meses a partir de la prestación de los servicios. Durante la vigencia de la garantía EL VENDEDOR dará solución a los problemas en cuanto al correcto funcionamiento, sin costo para EL COMPRADOR, siempre que sea utilizada en la plataforma tecnológica pactada y sobre la cual se instaló. Durante este periodo de garantía, EL VENDEDOR solucionara exclusivamente los errores y fallas atribuibles a programación del aplicativo. La garantía se perderá por las modificaciones que se realicen sin el consentimiento del VENDEDOR y las demás causales que establece este Contrato. La garantía no incluye el mal funcionamiento del software por factores diferentes al mismo software, en especial, problemas de hardware, virus, incompatibilidad con programas de ordenador distintos del software, entre otros. En ningún caso EL VENDEDOR resolverá como parte de la garantía problemas derivados del mal funcionamiento de redes eléctricas, equipos de cómputo, medios de almacenamiento, equipos periféricos, redes de comunicación, sistemas operativos, aplicaciones residentes en memoria o cualquier elemento externo, incluyendo la mala utilización del mismo por parte de los usuarios o por omisión de las recomendaciones dadas por EL VENDEDOR.

USAO_REL_0000234379

**CLAUSULA SEPTIMA. EXCLUSIONES:** El valor del presente Contrato no incluye: a) Servicios de mantenimiento correctivo cuando el funcionamiento defectuoso o falta total del sistema sean consecuencia de accidentes o abuso, actos de terceros, fuerza mayor o caso fortuito, b) Daños, copias de respaldo o reparación de la(s) Base(s) de Dato(s) (BDD). c) Soporte sobre aplicaciones o utilitarios o archivos diferentes al software instalado por EL VENDEDOR, d) Soporte sobre problemas técnicos presentados en equipos u ocasionados por software de terceros, e) Modificaciones o adaptaciones particulares sobre el software instalado, f) Nuevos desarrollos sobre cualquiera de los módulos, g) Tiempos de análisis de problemas generados por mal manejo o mal parametrización por parte del usuario, los cuales serán cobrados de acuerdo a la lista de precios de EL VENDEDOR, vigentes a la fecha del suceso.

**CLAUSULA OCTAVA. DERECHOS DE AUTOR:** EL VENDEDOR como propietario del producto informa al COMPRADOR que los servicios prestados y posibles desarrollos de software, en aplicación del artículo 20 de la Ley colombiana No 23 de 1982 se reservan los derechos morales, patrimoniales y comerciales derivados de su obra, así mismo EL COMPRADOR ES consciente que al carecer de derechos morales, patrimoniales o comerciales sobre la obra no pueden ejercer ninguno de estos derechos, y en particular, no puede reproducir o difundir la obra sin autorización expresa de EL VENDEDOR. Igualmente, EL VENDEDOR podrá efectuar a los programas que haya realizado cualquier modificación, conforme al artículo 23 de la Decisión 351 de la Comunidad Andina.

**CLAUSULA NOVENA. CONFIDENCIALIDAD:** EL VENDEDOR se obliga para con EL COMPRADOR a conservar la reserva, custodia y confidencialidad de toda la información a la que por efectos de la ejecución de este Contrato tenga conocimiento y acceso, y sea de interés y uso exclusivo del COMPRADOR, so pena de las sanciones legales pertinentes, e incumplimiento de las obligaciones contractuales pactadas en el presente Contrato.

**CLAUSULA DECIMA. INEXISTENCIA DE RELACION LABORAL:** El presente Contrato no genera relación laboral alguna con EL COMPRADOR y en consecuencia tampoco el pago de las prestaciones sociales y de ningún tipo de emolumentos distintos al valor acordado en la cláusula segunda, en relación al suministro de los productos y prestación de los servicios descritos en el objeto del presente Contrato.

**CLAUSULA DECIMO PRIMERA. INTERPRETACION, MODIFICACION, Y TERMINACION UNILATERALES:** Cuando surjan motivos posteriores al perfeccionamiento del Contrato que hicieren necesaria la interpretación, modificación del contrato, ambas partes deben estar de acuerdo frente a unas futuras modificaciones. La terminación unilateral Del contrato se dará por incumplimiento en las cláusulas descritas en este contrato.

**CLAUSULA DECIMO SEGUNDA. CESION**: EL VENDEDOR no podrá ceder las obligaciones contraídas en este Contrato, sin previa autorización escrita del COMPRADOR.

**CLAUSULA DECIMO TERCERA. MULTAS:** En caso de mora o de incumplimiento parcial de las obligaciones contractuales a cargo del VENDEDOR, las partes pactan, mediante el presente documento la tasación y cobro, previo requerimiento, de multas diarias sucesivas del punto cinco por ciento (0.5%) del valor total de la Contrato, sin que estas sobrepasen el 10% del valor total del mismo. La liquidación de las multas las efectuara el supervisor en las actas parciales de recibo y en el acta final y/o de recibo de los servicios prestados, según sea el momento en que se ocasionen.

USAO_REL_0000234380

**CLAUSULA DECIMO CUARTA, CLAUSULA PENAL PECUNIARIA:** Si llegara a suceder el evento del incumplimiento total de las obligaciones a cargo de EL COMPRADOR o del VENDEDOR, deberá pagar a título de clausula penal pecuniaria la parte, que incumplió, el valor correspondiente al diez por ciento (10%) del valor total de la Contrato, la que se podrá hacer efectiva previo requerimiento, con base en el presente documento, el cual presta merito ejecutivo o se podrá hacer efectivo por parte de la entidad del amparo de cumplimiento constituido a través de la garantía única.

**CLAUSULA DECIMO QUINTA. LIQUIDACION DEL CONTRATO:** El presente Contrato se liquidará de conformidad con lo establecido en las cláusulas contenidas en el mismo.

**CLAUSULA DECIMO SEXTA. SOLUCION DE CONTROVERSIAS:** Los conflictos que se sucedan durante la ejecución del objeto contractual se solucionaran preferiblemente mediante los mecanismos de arreglo directo de conciliación, caso contrario mediante la mesa de Arbitraje y Conciliación de la Cámara de Comercio de Medellín.

**CLAUSULA DECIMO SEPTIMA. SUPERVISION:** El VENDEDOR vigilara el adecuado cumplimiento del presente contrato a través del gerente general, subgerente y el Técnico Programador en Sistemas de EL VENDEDOR.

**CLAUSULA DECIMO OCTAVA. INDEMNIDAD:** EL COMPRADOR mantendrá indemne al VENDEDOR contra todo reclamo, demanda, acción legal y costo que pueda causarse o surgir por daños o lesiones a personas o Propiedades de terceros, ocasionados por el COMPRADOR, sus subcontratistas o sus vendedores durante la ejecución del evento y terminado este. Se consideran como hechos imputables al COMPRADOR todas las acciones u omisiones de su personal y de sus subcontratistas y vendedores y del personal al servicio de cualquiera de ellos, los errores y defectos, mala calidad y en general cualquier incumplimiento de sus obligaciones contractuales.

**CLAUSULA DECIMO NOVENA. DECLARACION DE ORIGEN LICITO DE LOS FONDOS DEL COMPRADOR:** EL COMPRADOR declare bajo la gravedad del juramento que los recursos que disponga para la ejecución del contrato, provienen del giro ordinario de los negocios derivados de su actividad económica o su objeto social y que no son producto de actividades ilícitas. En el evento en que las autoridades competentes nacionales o internacionales efectúen algún requerimiento al VENDEDOR con respecto a los recursos de EL COMPRADOR, queda obligado a responder ante ellas de forma exclusiva. EL COMPRADOR, con la firma del contrato, se obliga a suministrar toda la información que le sea solicitada relacionada con la prevención del lavado de activos y financiación del terrorismo. En caso de no aportar toda la documentación requerida, EL VENDEDOR queda facultado para dar por terminado el contrato de manera unilateral sin que haya lugar al pago de penalidad alguna. Igualmente, el COMPRADOR autoriza al VENDEDOR para consultar, si así lo estimare necesario, de manera directa o a través de terceros, bases o bancos de datos que contengan información sobre EL COMPRADOR, todo de conformidad con lo establecido en la normatividad vigente sobre datos personales y habeas data. EL COMPRADOR Declara que su fuente de fondos en ningún caso involucra actividades ilícitas de terceras personas y en todos los casos son fondos propios y por lo tanto no ha prestado su nombre para que terceras personas con recursos obtenidos ilícitamente efectúen negocios a nombre suyo. Por medio del presente instrumento el COMPRADOR además declara que ninguno de los socios o accionistas de la sociedad que representa se encuentran incluidos en las listas de control nacionales e internacionales que previenen el lavado de activos y la financiación del terrorismo. **Parágrafo 1:** El COMPRADOR autoriza a EL VENDEDOR a cancelar cualquier contrato que mantenga con el COMPRADOR en

USAO_REL_0000234381

el caso de comprobarse cualquier infracción de las normas legales de control de lavado de activos de acuerdo con la legislación colombiana vigente, o que se llegare a expedir durante la vigencia del contrato y, que exime a EL VENDEDOR, sus representantes, dependientes o mandatarios, de toda responsabilidad que se derive por información errónea, falsa a inexacta que hubiere proporcionado en este documento, o de la violación del mismo y autoriza a informar a las autoridades públicas competentes en Colombia de cualquier acto sospechoso de lavado a financiación del terrorismo, aun cuando la revelación de esa información pueda comprender secreto industrial o comercial, confidencial o de reserva para el COMPRADOR, sin que haya lugar al pago de penalidad alguna por la revelación de esa información. **Parágrafo 2.** El COMPRADOR manifiesta que posee mecanismos de prevención y control del lavado de activos, conocimiento de clientes, detección y reporte de operaciones sospechosas y control al financiamiento del terrorismo y que informara al VENDEDOR cuando considere que alguna actividad o movimiento en desarrollo del presente contrato sea sospechoso o simplemente inusual.

**CLAUSULA VIGESIMA. DOMICILIO CONTRACTUAL:** para los efectos judiciales y extrajudiciales del presente Contrato se fija como domicilio la ciudad de Medellín. Para constancia se firma en Medellín, a los **veintidós** (22) días del mes de **junio** de 2020.

**EL COMPRADOR**

████████████████████

Pasaporte No. ████████ de Argentina,
Representante Legal
SOFTMILL LLC

**EL VENDEDOR**
FELIPE ESTRADA ECHEVERRY
C.c ████████ de Envigado (Ant.)
Representante Legal
BIG DATA TECHNOLOGY SAS

USAO_REL_0000234382

# BIG DATA TECHNOLOGY S.A.S

# AZ TECHNOLOGIES LLC

### CONTRATO DE PRESTACION DE SERVICIOS INFORMATICOS

Entre los suscritos a saber: **FELIPE ESTRADA ECHEVERRY,** mayor de edad, identificado con la cedula de ciudadanía numero ▮▮▮▮▮▮▮ expedida en Envigado, en su calidad de Representante Legal de la sociedad **BIG DATA TECHNOLOGY SAS**, identificada con NIT **901.340.483–0**, quien para los efectos del presente contrato se denominara **EL VENDEDOR**, y ▮▮▮▮▮▮▮▮▮▮▮▮▮, mayor de edad, identificado con pasaporte número ▮▮▮▮▮▮▮ expedido en **ARGENTINA**, en su calidad de **REPRESENTANTE LEGAL** de la sociedad **AZ TECHNOLOGIES LLC,** identificada con EIN (Employer Identification Number) 38-4137060 con domicilio en 4490 Sw 136th Ave, Miramar FL 33027, Broward FL, en los Estados Unidos de América U.S.A , quien para efectos de este Contrato se denominará **EL COMPRADOR**, han acordado celebrar el presente Contrato de prestación de servicios informáticos, según las siguientes clausulas:

### CLAUSULAS

**CLAUSULA PRIMERA. OBJETO:** El objeto del presente contrato consiste en el diseño, instalación y puesta en marcha de la administración de bienes tangibles e intangibles, administración de espacios de almacenamiento masivo en la nube y la administración de activos intangibles no relacionados con la propiedad intelectual. De igual manera, se podrán prestar servicios de arrendamiento y/o venta de software que llegare a solicitar EL COMPRADOR. El servicio incluye Análisis SEO y SEM, Publicidad Google Adwords para CPC y CPA, Desarrollo PHP - HTML - CSS – Bootstrap, integración de aplicación estándar (CRM, ERP, HR), Bases de Datos: Oracle – Postgres - MySQL, Servicio de mantenimiento Evolutivo, correctivo y operativo de aplicación y sistema, Desarrollo Móvil (Android e iOS), campañas Facebook ADS, diseño de arquitectura y sistema de software, acceso al software D.LINE DE SEGURIDAD INFORMATICA, con diez (10) usuarios de acceso concurrente y quince (15) usuarios identificados, entre otros. De igual manera, dentro de estas actividades se utilizará el software D.LINE DE SEGURIDAD INFORMATICA, que incluye tres módulos robustos para digitalización de archivos, administración de correspondencia y planeación, ejecución y control de flujos de trabajo informáticos. Además, el software D.LINE DE SEGURIDAD INFORMATICA, tiene incorporados los plugins y scripts, para una mayor versatilidad y eficiencia del aplicativo. Incluye también el presente contrato 12 horas de capacitación a cargo del Vendedor en favor del Comprador, la cual podrán ser realizadas de forma presencial en las oficinas del Vendedor o virtualmente a través de videoconferencias. **Parágrafo 1: Características**. Las características de los detalles de los servicios a prestar están descritas en la PROPUESTA COMERCIAL No. DAZ 221 del 31 marzo de 2020, revisada y aprobada por EL COMPRADOR y la cual se considera incorporada integralmente al presente Contrato, **Parágrafo 2: Proceso de implementación**. El acompañamiento técnico de la prestación de los servicios e implementación se harán por el VENDEDOR, de forma presencial o virtual, a través de videoconferencias. **Parágrafo 3: Elementos que cubre el servicio:** incluye el soporte lógico con manuales, fichas técnicas y documentación comercial que son de propiedad de los autores y que le conceden al COMPRADOR por medio del presente documento una garantía que los

USAO_REL_0000234383

procesos se llevaran dentro de los tiempos estipulados. **Parágrafo 4. Restricciones De Reproducción:** Los servicios objeto de este contrato está protegidos por las leyes de propiedad intelectual nacional e internacional, por tanto, EL COMPRADOR exclusivamente podrá hacer copia de seguridad de sus datos, siendo esta su responsabilidad desde el primer día de ejecución del contrato, siguiendo las instrucciones impartidas por el VENDEDOR, de sus manuales o de la capacitación recibida. **Parágrafo 5: Comunicación De Las Restricciones Por El Comprador:** EL COMPRADOR comunicara las condiciones de este acuerdo a todo empleado, bajo su dirección y/o control que haya de utilizar estos servicios. **Parágrafo 6: Uso No Autorizado de los sistemas informáticos:** EL COMPRADOR se compromete a tomar las medidas pertinentes para asegurar que las personas empleadas o bajo su dirección y control cumplan las condiciones de este acuerdo de prestación de servicios, incluyendo, sin restricciones, el no permitir deliberadamente a nadie utilizar ninguna parte del software autorizado con la finalidad de copiar, distribuir, descifrar o alterar su código fuente. Si EL COMPRADOR tuviera conocimiento de que el software se estuviera usando por tales personas de modo no autorizado por este acuerdo, deberá usar todos los medios a su alcance para que cese inmediatamente tal uso, asumiendo la responsabilidad legal, civil y pecuniaria de tal hecho. EL COMPRADOR deberá notificar por escrito al VENDEDOR, toda violación de seguridad identificada por él, en un lapso no superior a dos (2) días. **Parágrafo 7: Software De Terceros:** La utilización de otros productos o tecnologías complementarios como: bases de datos, navegadores, sistemas operativos, anti -virus, parches y demás, serán responsabilidad de EL COMPRADOR y este deberá notificar al VENDEDOR, cualquier utilización de software ajeno que se ejecute especialmente en el servidor o computador que aloja este servicio y/o producto. **Parágrafo 8: Garantía De Funcionamiento:** EL VENDEDOR como prestador de los servicios anteriormente descritos, garantiza el correcto funcionamiento y de soluciones requeridas por el COMPRADOR, mas no de la infraestructura computacional y de comunicaciones. EL COMPRADOR debe contar con condiciones eléctricas, de comunicaciones, ambientales e informáticas ideales para operar equipos de cómputo y redes de dates TCP-IP. **Parágrafo 9: Hardware Y Software Del Servidor.** El software garantiza su operación en computadoras con arquitectura INTEL o AMD de Ultima generación tecnológica, los cuales posean un espacio en disco duro libre de 10 TB, 1 TB en memoria principal, tarjeta de red, que funcionen y que operen sobre el sistema operativo LINUX Versiones RED HAT y/o SUSE y sus derivados, Windows XP, 2000, 2003 server, servidor Web Apache versión 2.0.58 y Base de Dates ORACLE, SQL SERVER, y POSTGRESQL. Las garantías de los servicios descritos en el contrato solo se cubren sobre este tipo de instalaciones.  EL COMPRADOR debe contar con un sistema de poder ininterrumpido o U.P.S, conectado al equipo de cómputo que almacene los datos y las imágenes para proteger la integridad de la aplicación. Todas las licencias adicionales y que corresponden a otros fabricantes, deben ser adquiridas o dispuestas por EL COMPRADOR bajo su responsabilidad. Mientras que EL VENDEDOR, coloca a disposición sus recursos humanos y técnicos para garantizar la confianza y el respaldo de estos servicios y/o productos, si y solo si las condiciones de instalación tienen las características aquí descritas. **Parágrafo 10: Tiempo De Garantía.** Una vez hecho la prestación de los servicios se estipula una garantía de funcionamiento de seis (6) meses, tiempo en el cual, si el cliente certifica algún defecto o error, deberá notificarla por escrito en un lapso no superior a cinco (5) días o a través del sistema de mesa de ayuda que proporciona EL VENDEDOR, indicando el tipo de anomalía, hora, fecha y operación realizada. **Parágrafo 11. Excepciones De La Garantía.** EL VENDEDOR, no se responsabilizará de los daños directos o indirectos, consecuentes de la utilización o imposibilidad de utilización de las aplicaciones, incluida la perdida de datos que se produjeren con ocasión o en relación con el uso de algún software o aplicación tecnológica. La garantía en ningún caso cubre problemas eléctricos, ambientales o la realización de copias

USAO_REL_0000234384

de seguridad de datos o imágenes. La garantía aplica exclusivamente a problemas o fallas en los servicios, que en caso de contener los servicios o aplicaciones algún error de este tipo, EL VENDEDOR, se compromete a solucionarlo durante la vigencia de la garantía, previa notificación del cliente en un periodo no superior a tres (3) días hábiles. **Parágrafo 12, Exclusión De Responsabilidad:** EL VENDEDOR, no concede ninguna otra garantía de servicios tecnológicos y queda expresamente excluida toda responsabilidad por infracción de otra garantía a condición, dado que EL VENDEDOR, no responderá por negociaciones o actuaciones técnicas efectuadas por personas no autorizadas por el prestador del servicio que puedan afectar de manera directa o indirecta cualquiera de los componentes necesarios para el correcto funcionamiento de los servicios prestamos o desarrollos tecnológicos efectuados. El cliente debe reportar por escrito con al menos cinco (5) días de antelación, cualquier modificación, actualización o reforma al equipo de cómputo o servidor donde EL VENDEDOR este efectuando la prestación de los servicios tecnológicos, para evaluar la pertinencia y las implicaciones de dichos eventos. No informar de estas actividades puede anular la garantía. **Parágrafo 13: Criterio De Selección del Software Por El Comprador:** EL COMPRADOR es el único responsable de la selección y criterio de idoneidad en la elección de algún software, en ese sentido se entiende que EL COMPRADOR comparte la visión de los desarrolladores y/o autores para obtener los resultados esperados. **Parágrafo 14. Asistencia Técnica**: Durante el periodo de garantía del servicio y en caso de existir algún problema y error de software o funcionamiento de los aplicativos, que imposibilite al cliente realizar sus labores (digitalización, captura, consulta, registro o procesamiento de datos, entre otros relacionados), deberá reportarlo a través del sistema de mesa de ayuda de EL VENDEDOR, o comunicarse por las líneas telefónicas para brindar asistencia técnica.

**CLAUSULA SEGUNDA. VALOR DEL CONTRATO y FORMA DE PAGO:** El valor total del presente Contrato se pacta en la suma de **NOVECIENTOS TREINTA Y OCHO MIL QUINIENTOS ONCE dólares americanos (USD $938.511),** que **EL COMPRADOR, AZ TECHNOLOGIES LLC** cancelara al VENDEDOR con abonos periódicos a partir de la firma del presente contrato durante **3 MESES** hasta completar el valor total del presente contrato. **Parágrafo 1.** La prestación de estos servicios y/o la venta de este servicio intangible está exento de IVA de acuerdo con la legislación vigente en Colombia, en la cual está expresamente aclarado el total del contrato y previa presentación de las respectivas facturas por parte del VENDEDOR.

**CLAUSULA TERCERA. PLAZO DE EJECUCION:** El plazo del presente Contrato será por **TRES (3) MESES**, contados a partir de la suscripción y legalización del mismo.

**CLAUSULA CUARTA. OBLIGACIONES DEL VENDEDOR:** EL VENDEDOR se obliga para con EL COMPRADOR a: a) Cumplir con el objeto del Contrato, b) Cumplir con las obligaciones expuestas en la **Propuesta Comercial No DAZ-221 del 31 Marzo de 2020**, y en el presente Contrato, con calidad y responsabilidad de las labores a realizar, c) Realizar la capacitación al personal o personas a cargo del COMPRADOR para que se puedan realizar sus actividades y que estén directa o indirectamente relacionados con los servicios tecnológicos prestados, en todos sus o componentes, en la ciudad donde el VENDEDOR notifique al COMPRADOR para una (1) única vez durante las sesiones fijadas dentro del cronograma de capacitación definido y por el tiempo establecido en la cláusula primera del presente contrato. Procesos posteriores relacionadas con reentrenamientos serán facturados por el VENDEDOR previa aprobación del COMPRADOR, d) Instalar los softwares requeridos y capacitar a los usuarios, según cronograma. e) Entregar los software debidamente instalados y en operación en un servidor del COMPRADOR, f) Entregar los manuales de instalación y manuales de usuario de los software, en caso tal, anexando el CD de instalación del Software, g) Prestar

USAO_REL_0000234385

acompañamiento en las actividades de implementación de los software, a través de un Ingeniero de Soporte del VENDEDOR en sesiones presenciales o virtuales con el personal asignado para el COMPRADOR, para definir y ajustar la configuración general del sistema (creación de sedes, cargos, dependencias, etc.), parametrizar el formulario de radicación de correspondencia recibida, despachada e interna, diseñar y crear las plantillas asociadas a una (1) dependencia para el maneja de los documentos correspondientes en el módulo de archivo, así coma la creación en el software de las Tablas de Retención Documental. En el módulo de Flujo de Trabajo el VENDEDOR se compromete a colaborar con la revisión de diagramas de base, la ejecución, prueba y validación de un (1) circuito de trabajo que sirva como base para la replicación de las subsiguientes que se creen por parte del COMPRADOR. En todo caso, EL VENDEDOR brindara el soporte y acompañamiento en la creación de una primera instancia de aplicación tanto a nivel de correspondencia, archivo como de flujo de trabajo y es responsabilidad de EL COMPRADOR extender dicha funcionalidad a toda la organización de acuerdo con su propia disponibilidad de recursos (tiempo, personas, etc.) h) Guardar reserva sobre la información interna de EL COMPRADOR, i) Entregar las actualizaciones que sean liberadas dentro del término del presente Contrato; j) Suministrar el personal idóneo para el desarrollo de las labores propias del contrato y mantenerlo capacitado en la funcionalidad de la solución y en los aspectos legales y conceptuales relacionados. k) Suministrar la documentación correspondiente. 1) Asignar un ingeniero como interlocutor para el seguimiento y supervisión de la ejecución del Contrato, l) Cumplir con los tiempos de respuesta descritos en la cláusula objeto del Contrato, m) cumplir con los tiempos establecidos en el cronograma de instalación y capacitación el cual es entregado por EL VENDEDOR y que se anexa a este Contrato como parte integral del mismo, n) Todas las demás obligaciones establecidas en este Contrato.

**CLAUSULA QUINTA. OBLIGACIONES DE EL COMPRADOR:** EL COMPRADOR se obliga con EL VENDEDOR a: a) Pagar el precio del contrato en los términos pactados, b) Cumplir con las obligaciones expuestas en el presente Contrato, con calidad y responsabilidad de las labores a realizar, c) velar por el adecuado uso de las licencias de los productos de software en los términos del presente contrato, d) Todas las demás obligaciones establecidas en este Contrato.

**CLAUSULA SEXTA. PERIODO DE GARANTIA:** Sin perjuicios de las garantías pactadas en el presente contrato, EL VENDEDOR ofrece al cliente garantía por un periodo de seis (6) meses a partir de la prestación de los servicios. Durante la vigencia de la garantía EL VENDEDOR dará solución a los problemas en cuanto al correcto funcionamiento, sin costo para EL COMPRADOR, siempre que sea utilizada en la plataforma tecnológica pactada y sobre la cual se instaló. Durante este periodo de garantía, EL VENDEDOR solucionara exclusivamente los errores y fallas atribuibles a programación del aplicativo. La garantía se perderá por las modificaciones que se realicen sin el consentimiento del VENDEDOR y las demás causales que establece este Contrato. La garantía no incluye el mal funcionamiento del software por factores diferentes al mismo software, en especial, problemas de hardware, virus, incompatibilidad con programas de ordenador distintos del software, entre otros. En ningún caso EL VENDEDOR resolverá como parte de la garantía problemas derivados del mal funcionamiento de redes eléctricas, equipos de cómputo, medios de almacenamiento, equipos periféricos, redes de comunicación, sistemas operativos, aplicaciones residentes en memoria o cualquier elemento externo, incluyendo la mala utilización del mismo por parte de los usuarios o por omisión de las recomendaciones dadas por EL VENDEDOR.

USAO_REL_0000234386

**CLAUSULA SEPTIMA. EXCLUSIONES:** El valor del presente Contrato no incluye: a) Servicios de mantenimiento correctivo cuando el funcionamiento defectuoso o falta total del sistema sean consecuencia de accidentes o abuso, actos de terceros, fuerza mayor o caso fortuito, b) Daños, copias de respaldo o reparación de la(s) Base(s) de Dato(s) (BDD). c) Soporte sobre aplicaciones o utilitarios o archivos diferentes al software instalado por EL VENDEDOR, d) Soporte sobre problemas técnicos presentados en equipos u ocasionados por software de terceros, e) Modificaciones o adaptaciones particulares sobre el software instalado, f) Nuevos desarrollos sobre cualquiera de los módulos, g) Tiempos de análisis de problemas generados por mal manejo o mal parametrización por parte del usuario, los cuales serán cobrados de acuerdo a la lista de precios de EL VENDEDOR, vigentes a la fecha del suceso.

**CLAUSULA OCTAVA. DERECHOS DE AUTOR:** EL VENDEDOR como propietario del producto informa al COMPRADOR que los servicios prestados y posibles desarrollos de software, en aplicación del artículo 20 de la Ley colombiana No 23 de 1982 se reservan los derechos morales, patrimoniales y comerciales derivados de su obra, así mismo EL COMPRADOR ES consciente que al carecer de derechos morales, patrimoniales o comerciales sobre la obra no pueden ejercer ninguno de estos derechos, y en particular, no puede reproducir o difundir la obra sin autorización expresa de EL VENDEDOR. Igualmente, EL VENDEDOR podrá efectuar a los programas que haya realizado cualquier modificación, conforme al artículo 23 de la Decisión 351 de la Comunidad Andina.

**CLAUSULA NOVENA. CONFIDENCIALIDAD:** EL VENDEDOR se obliga para con EL COMPRADOR a conservar la reserva, custodia y confidencialidad de toda la información a la que por efectos de la ejecución de este Contrato tenga conocimiento y acceso, y sea de interés y uso exclusivo del COMPRADOR, so pena de las sanciones legales pertinentes, e incumplimiento de las obligaciones contractuales pactadas en el presente Contrato.

**CLAUSULA DECIMA. INEXISTENCIA DE RELACION LABORAL:** El presente Contrato no genera relación laboral alguna con EL COMPRADOR y en consecuencia tampoco el pago de las prestaciones sociales y de ningún tipo de emolumentos distintos al valor acordado en la cláusula segunda, en relación al suministro de los productos y prestación de los servicios descritos en el objeto del presente Contrato.

**CLAUSULA DECIMO PRIMERA. INTERPRETACION, MODIFICACION, Y TERMINACION UNILATERALES:** Cuando surjan motivos posteriores al perfeccionamiento del Contrato que hicieren necesaria la interpretación, modificación del contrato, ambas partes deben estar de acuerdo frente a unas futuras modificaciones. La terminación unilateral Del contrato se dará por incumplimiento en las clausulas descritas en este contrato.

**CLAUSULA DECIMO SEGUNDA. CESION:** EL VENDEDOR no podrá ceder las obligaciones contraídas en este Contrato, sin previa autorización escrita del COMPRADOR.

**CLAUSULA DECIMO TERCERA. MULTAS:** En caso de mora o de incumplimiento parcial de las obligaciones contractuales a cargo del VENDEDOR, las partes pactan, mediante el presente documento la tasación y cobro, previo requerimiento, de multas diarias sucesivas del punto cinco por ciento (0.5%) del valor total de la Contrato, sin que estas sobrepasen el 10% del valor total del mismo. La liquidación de las multas las efectuara el supervisor en las actas parciales de recibo y en el acta final y/o de recibo de los servicios prestados, según sea el momento en que se ocasionen.

USAO_REL_0000234387

**CLAUSULA DECIMO CUARTA. CLAUSULA PENAL PECUNIARIA:** Si llegara a suceder el evento del incumplimiento total de las obligaciones a cargo de EL COMPRADOR o del VENDEDOR, deberá pagar a título de clausula penal pecuniaria la parte, que incumplió, el valor correspondiente al diez por ciento (10%) del valor total de la Contrato, la que se podrá hacer efectiva previo requerimiento, con base en el presente documento, el cual presta merito ejecutivo o se podrá hacer efectivo por parte de la entidad del amparo de cumplimiento constituido a través de la garantía única.

**CLAUSULA DECIMO QUINTA. LIQUIDACION DEL CONTRATO:** El presente Contrato se liquidará de conformidad con lo establecido en las cláusulas contenidas en el mismo.

**CLAUSULA DECIMO SEXTA. SOLUCION DE CONTROVERSIAS:** Los conflictos que se sucedan durante la ejecución del objeto contractual se solucionaran preferiblemente mediante los mecanismos de arreglo directo de conciliación, caso contrario mediante la mesa de Arbitraje y Conciliación de la Cámara de Comercio de Medellín.

**CLAUSULA DECIMO SEPTIMA. SUPERVISION:** El VENDEDOR vigilara el adecuado cumplimiento del presente contrato a través del gerente general, subgerente y el Técnico Programador en Sistemas de EL VENDEDOR.

**CLAUSULA DECIMO OCTAVA. INDEMNIDAD:** EL COMPRADOR mantendrá indemne al VENDEDOR contra todo reclamo, demanda, acción legal y costo que pueda causarse o surgir por daños o lesiones a personas o Propiedades de terceros, ocasionados por el COMPRADOR, sus subcontratistas o sus vendedores durante la ejecución del evento y terminado este. Se consideran como hechos imputables al COMPRADOR todas las acciones u omisiones de su personal y de sus subcontratistas y vendedores y del personal al servicio de cualquiera de ellos, los errores y defectos, mala calidad y en general cualquier incumplimiento de sus obligaciones contractuales.

**CLAUSULA DECIMO NOVENA. DECLARACION DE ORIGEN LICITO DE LOS FONDOS DEL COMPRADOR:** EL COMPRADOR declare bajo la gravedad del juramento que los recursos que disponga para la ejecución del contrato, provienen del giro ordinario de los negocios derivados de su actividad económica o su objeto social y que no son producto de actividades ilícitas. En el evento en que las autoridades competentes nacionales o internacionales efectúen algún requerimiento al VENDEDOR con respecto a los recursos de EL COMPRADOR, queda obligado a responder ante ellas de forma exclusiva. EL COMPRADOR, con la firma del contrato, se obliga a suministrar toda la información que le sea solicitada relacionada con la prevención del lavado de activos y financiación del terrorismo. En caso de no aportar toda la documentación requerida, EL VENDEDOR queda facultado para dar por terminado el contrato de manera unilateral sin que haya lugar al pago de penalidad alguna. Igualmente, el COMPRADOR autoriza al VENDEDOR para consultar, si así lo estimare necesario, de manera directa o a través de terceros, bases o bancos de datos que contengan información sobre EL COMPRADOR, todo de conformidad con lo establecido en la normatividad vigente sobre datos personales y habeas data. EL COMPRADOR Declara que su fuente de fondos en ningún caso involucra actividades ilícitas de terceras personas y en todos los casos son fondos propios y por lo tanto no ha prestado su nombre para que terceras personas con recursos obtenidos ilícitamente efectúen negocios a nombre suyo. Por medio del presente instrumento el COMPRADOR además declara que ninguno de los socios o accionistas de la sociedad que representa se encuentran incluidos en las listas de control nacionales e internacionales que previenen el lavado de activos y la financiación del terrorismo. **Parágrafo 1:** El COMPRADOR autoriza a EL VENDEDOR a cancelar cualquier contrato que mantenga con el COMPRADOR en

USAO_REL_0000234388

el caso de comprobarse cualquier infracción de las normas legales de control de lavado de activos de acuerdo con la legislación colombiana vigente, o que se llegare a expedir durante la vigencia del contrato y, que exime a EL VENDEDOR, sus representantes, dependientes o mandatarios, de toda responsabilidad que se derive por información errónea, falsa a inexacta que hubiere proporcionado en este documento, o de la violación del mismo y autoriza a informar a las autoridades públicas competentes en Colombia de cualquier acto sospechoso de lavado a financiación del terrorismo, aun cuando la revelación de esa información pueda comprender secreto industrial o comercial, confidencial o de reserva para el COMPRADOR, sin que haya lugar al pago de penalidad alguna por la revelación de esa información. **Parágrafo 2.** El COMPRADOR manifiesta que posee mecanismos de prevención y control del lavado de activos, conocimiento de clientes, detección y reporte de operaciones sospechosas y control al financiamiento del terrorismo y que informara al VENDEDOR cuando considere que alguna actividad o movimiento en desarrollo del presente contrato sea sospechoso o simplemente inusual.

**CLAUSULA VIGESIMA. DOMICILIO CONTRACTUAL:** para los efectos judiciales y extrajudiciales del presente Contrato se fija como domicilio la ciudad de Medellín. Para constancia se firma en Medellín, a los **veintisiete** (27) días del mes de **mayo** de 2020.

**EL COMPRADOR**

▉▉▉▉▉▉▉▉▉▉▉▉▉

Pasaporte No. ▉▉▉▉▉▉ de Argentina,
Representante Legal
AZ TECHNOLOGIES LLC

**EL VENDEDOR**
FELIPE ESTRADA ECHEVERRY
C.c. ▉▉▉▉▉▉ de Envigado (Ant.)
Representante Legal
BIG DATA TECHNOLOGY SAS

USAO_REL_0000234389