UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 24 Cr. 133 (MKV)

LEONARDO DE JESUS ZULUAGA DUQUE, a/k/a "Rey,"

Defendant.

------------------------------x

New York, N.Y.
May 12, 2026
3:30 p.m.

Before:

HON. MARY KAY VYSKOCIL,

District Judge

APPEARANCES

JAY CLAYTON,
United States Attorney for the
Southern District of New York
BY: JENNIFER ONG
DAVID MARKEWITZ
ELI JACOB MARK
Assistant United States Attorneys

JILL R. SHELLOW
RICHARD PALMA
Attorneys for Defendant

ALSO PRESENT:
CRISTINA WEISZ, Spanish Interpreter
ELLE DOWD, Spanish Interpreter

(Case called)

MS. ONG: Good afternoon, your Honor. Jennifer Ong, Eli Mark, and David Markewitz for the government.

THE COURT: Good afternoon to all of you.

MS. SHELLOW: Good afternoon, your Honor. Jill Shellow for Mr. Zuluaga Duque. I am joined at counsel table by Richard Palma.

THE COURT: Good afternoon to you, Ms. Shellow and Mr. Palma. And good afternoon to you, Mr. Zuluaga Duque.

MR. PALMA: Good afternoon.

THE COURT: Sir, with the aid of the interpreters, are you able to understand me clearly?

THE DEFENDANT: Yes, ma'am.

THE COURT: Thank you.

Good afternoon to our court reporter, Mr. Malinowski, and to our interpreters, and to the marshals. Thank you, all, for being here.

As you know, I'm Judge Vyskocil. We're here for what I'm told is a change of plea hearing for Mr. Zuluaga Duque.

The first question that I have is, this really isn't a change of plea hearing because you apparently have a new superseding indictment, S7, and he's never even been arraigned on that indictment.

MS. ONG: That's correct, your Honor, and that is the indictment that he's pleading to.

THE COURT: Why? Are the charges any different than what was in the prior indictments?

MS. ONG: The charges are slightly different in that they provide additional details.

THE COURT: But the indictment doesn't have to have all the details. If the charges are the same, why are we doing this?

MS. ONG: Your Honor, we sought this indictment in anticipation of the trial a couple weeks ago. It was filed on April 23rd. After we sought the indictment, defense counsel approached us seeking to enter into plea negotiations, and so those plea discussions followed the indictment S7.

THE COURT: So are the charges the same two counts?

MS. ONG: Yes, your Honor, it's the same two counts. Count One is the conspiracy to commit money laundering, which was Count One in the prior S2 indictment. What is now Count Two was Count Six in the prior indictment, which is the conspiracy to import cocaine.

THE COURT: Okay. But he has to be arraigned on that, right?

MS. ONG: That's correct, your Honor.

THE COURT: Okay. I think I asked you before, but remind me, there are no identifiable victims entitled to notice?

MS. ONG: That's correct, your Honor.

THE COURT: So, by way of background, Ms. Shellow, do you have anything you want to say on the question I asked about the new indictment?

MS. SHELLOW: No, your Honor. I would, however, before you start the arraignment, like to speak to him with the aid of an interpreter so he understands that there's going to be an arraignment before a change of plea.

THE COURT: All right. Let me just put the basic information on the record and then you can do that, of course.

By way of background and apropos of the issues I was just discussing with the government, Mr. Zuluaga Duque was first charged in the S1 indictment with conspiracy to commit money laundering and conspiracy to import cocaine. He was arrested on July 10th of 2025 and has, since his presentment on the second superseding indictment before Magistrate Judge Cave on July 11 of 2025, been detained on consent. I arraigned him on July 15th, 2025. That's in connection with the S2 indictment, I assume, yes?

MS. ONG: Yes, your Honor.

THE COURT: At which point he pled not guilty. I'm now advised that the defendant has an application to withdraw his plea of not guilty and, pursuant to a plea agreement with the government, enter a plea of guilty to the two counts in the S7 indictment filed in this action at ECF 240 and 241.

Will, can you tell me the date.

(Pause)

MS. ONG: Your Honor, I have the date. April 23rd, 2026.

THE COURT: So, what I have discussed with the government's lawyers is that you're not withdrawing a plea of not guilty to that indictment because that's a new indictment which simply strips out, as I understand it, the charges to which you're not pleading guilty and adds some factual details, but you have not yet been arraigned or entered a plea with respect to that indictment; is that accurate?

MS. ONG: That is accurate, your Honor.

THE COURT: Ms. Shellow, accurate?

MS. SHELLOW: That is accurate, your Honor.

THE COURT: So I'll pause here and give you an opportunity to -- well, let me just say, Mr. Zuluaga Duque, Count One of that S7 indictment, the one to which I'm told you intend to enter a plea of guilty, that first count charges you with conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h), the same charge that was contained in the operative indictment to which you've already entered a plea of not guilty; and Count Two charges you with conspiracy to import cocaine into the United States, in violation of Title 21, United States Code, Section 963, that was Count Six in the prior indictment to which you pled not guilty. Now that these charges have been put in a new

indictment that strips out all the other charges and removes your codefendants because the cases against them have been resolved with one exception, we have this new indictment. So, the first step in the criminal process is I have to arraign you on that indictment and we need to do that before you can enter a plea of guilty. So your lawyer wants to talk with you briefly about that.

MS. SHELLOW: Thank you, your Honor.

(Counsel and defendant conferred)

Your Honor, we're ready. Thank you.

THE COURT: Ms. Shellow, do you have a copy of the S7 superseding indictment there?

MS. SHELLOW: I do, your Honor.

THE COURT: Have you translated this into Spanish?

MS. SHELLOW: I have had it translated, and Mr. Zuluaga Duque has a Spanish version of it in front of him and I have an English version in front of me.

THE COURT: Does the government wish for the Spanish version to be marked or are you fine proceeding this way?

MS. ONG: I think we're fine, your Honor, without having it marked.

THE COURT: Ms. Shellow, you had that translation done with the aid of a certified interpreter?

MS. SHELLOW: I did, your Honor. It was done by Alex Weider, who is a certified court interpreter.

THE COURT: Great.

Mr. Zuluaga Duque, have you seen a copy of the S7 superseding indictment containing the charges against you?

THE DEFENDANT: Yes, ma'am.

THE COURT: And you are able to read it in the translation given to you by your lawyer with the aid of our certified interpreters?

THE DEFENDANT: Yes, your Honor.

THE COURT: And have you discussed it with your lawyer?

THE DEFENDANT: Yes, ma'am.

THE COURT: Would you like me to read the indictment aloud or do you waive public reading?

THE DEFENDANT: Your Honor, I waive the right to read in public.

THE COURT: How do you plead at this time to the charge against you in Count One of the S7 superseding indictment?

THE DEFENDANT: Not guilty.

THE COURT: And how do you plead to the charge against you in Count Two of the superseding indictment?

THE DEFENDANT: Not guilty.

THE COURT: You're standing?

MS. SHELLOW: I'm standing out of habit.

THE COURT: Okay. You can have a seat, though.

MS. SHELLOW: Thank you.

THE COURT: Mr. Zuluaga Duque, I'm told that you now wish to withdraw the plea you've just entered of not guilty and, pursuant to an agreement that you've entered into with the government, enter a plea of guilty to the two counts in this S7 indictment filed on the docket.

Is that what you wish to do today?

THE DEFENDANT: Yes, your Honor.

THE COURT: Before I can accept your guilty plea, sir, there are a number of questions that I need to ask you while you are under oath in order to ensure myself that your plea is in fact a valid plea. I may at times cover a point more than once, I may cover a matter that was also addressed in various forms or agreements that you may have signed. If I do that, it's because it's very important that you understand what we're doing here today.

So, I'm going to ask you, sir, if you don't understand something that I'm saying to you either because you don't understand the substance of what I'm saying or because there's a problem with the interpretation, please let me know that and I'll stop, I'll try to clarify for you and/or your lawyer can speak to you to try to explain to you more clearly.

At any point if you wish to speak to your lawyer, you have a right to do that and you should just let me know about it.

Will you do that, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: Ms. Dempsey, would you please administer the oath to Mr. Zuluaga Duque.

(Defendant sworn)

Sir, do you understand that you have now just solemnly promised to tell the truth, and that if you answer any of my questions falsely, your false or untrue answers may later be used against you in another prosecution for perjury or making a false statement?

THE DEFENDANT: Yes, your Honor.

THE COURT: Can you tell me, sir, how old are you?

THE DEFENDANT: I'm 64 years old.

THE COURT: And how far did you go in school?

THE DEFENDANT: Sixth grade.

THE COURT: Have you had any training or education after that?

THE DEFENDANT: No, your Honor.

THE COURT: Where did you go to school?

THE DEFENDANT: In the town where I was born in Colombia.

THE COURT: Do you speak and understand English at all?

THE DEFENDANT: Just a few words.

THE COURT: Are you able to speak and understand

English clearly with the aid of our interpreters?

THE DEFENDANT: Yes, your Honor.

THE COURT: Since you told me you went to school in Colombia in the town where you were born, am I correct that you are not a citizen of the United States?

THE DEFENDANT: No, your Honor.

THE COURT: I'm not correct or no, you're not a citizen?

THE DEFENDANT: I'm not a U.S. citizen.

THE COURT: And you've never been a U.S. citizen, correct?

THE DEFENDANT: Never. Never.

THE COURT: Are you now or have you recently been under the care of a medical doctor or other medical healthcare professional?

THE DEFENDANT: No, your Honor.

THE COURT: Are you now or have you recently been under the care of a mental health professional?

THE DEFENDANT: No, your Honor.

THE COURT: Have you ever been treated or hospitalized for any mental health illness?

THE DEFENDANT: No, your Honor.

THE COURT: Have you ever been treated or hospitalized for any type of addiction, and that includes drugs, alcohol, sex, gambling, any addiction at all?

THE DEFENDANT: No, your Honor.

THE COURT: Even if you haven't been treated or hospitalized, have you ever been addicted to anything?

THE DEFENDANT: No. Alcohol is more what I drink the most.

THE COURT: Do you feel you're addicted to alcohol?

THE DEFENDANT: Frankly, I don't know. I don't think so.

THE COURT: Can you function without drinking alcohol?

THE DEFENDANT: Yes. I believe so, yes.

THE COURT: When was the last time you had alcohol to drink?

THE DEFENDANT: The day before my arrest.

THE COURT: In the last 24 hours, have you had any drugs, medicine, any pills of any kind?

THE DEFENDANT: No. No. No, your Honor.

THE COURT: Right. And I'm including in that any kind of prescription medication.

THE DEFENDANT: None. None.

THE COURT: Do you take any medications regularly?

THE DEFENDANT: Right now, I'm taking a pill for cholesterol.

THE COURT: When did you last take that?

THE DEFENDANT: Yesterday at 5:00 p.m.

THE COURT: Have you had any alcohol to drink in the

last 24 hours?

THE DEFENDANT: No, your Honor.

THE COURT: Is your mind clear today?

THE DEFENDANT: Yes, your Honor.

THE COURT: You understand what it is that we're doing?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are you feeling well physically? In other words, are you healthy today?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are you represented by counsel?

THE DEFENDANT: Yes, your Honor.

THE COURT: Who is your counsel?

THE DEFENDANT: Mr. Richard Palma and Mrs. Jill Shellow.

THE COURT: Are you satisfied with your lawyers?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do either counsel have any doubt as to Mr. Zuluaga Duque's competence to enter an informed plea at this time?

MS. ONG: No, your Honor.

MS. SHELLOW: No, your Honor. Thank you.

THE COURT: All right. Mr. Zuluaga Duque, your attorneys inform me that you wish to withdraw your plea of not guilty and enter a plea of guilty to Count One, charging you

with conspiracy to import into the United States cocaine; and a count charging you with conspiracy to commit money laundering.

Is that in fact what you wish to do?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you fully discussed your case with your lawyers, including the charges which you tell me you intend to plead guilty to and any possible defenses to those charges?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you discussed the consequences of entering a plea of guilty?

THE DEFENDANT: Yes, your Honor.

THE COURT: And are you satisfied with your lawyers and their representation of you?

THE DEFENDANT: Yes, your Honor.

THE COURT: On the basis of the defendant's responses to my questions and my observation of his personal demeanor, I do find that he is fully competent to enter an informed plea at this time.

Sir, before I can accept any plea from you, I'm going to ask you certain additional questions. Those questions are intended to satisfy me that you wish to plead guilty because you are in fact guilty, and that you fully understand your rights and the consequences of entering a guilty plea.

I'm going to begin by describing to you certain rights

that you have under the Constitution and the laws of the United States. You will be giving up these rights if you enter a plea of guilty. I'm going to ask you, sir, please listen carefully, and I'm going to remind you again, if you don't understand something that I'm saying or asking you about, please stop me and either I or your lawyer will explain to you more fully.

Will you do that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Under the Constitution and laws of the United States, you have the right to a speedy and a public trial by a jury on the charges against you that are contained in the indictment.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that you have the right to plead not guilty and to continue to plead not guilty to the charges against you?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that if there were a trial, you would be presumed innocent and the government would be required to prove you guilty by competent evidence and beyond a reasonable doubt?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that you would not have to prove at trial that you were innocent?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that if there were a trial, a jury made up of 12 people selected from this district would have to agree unanimously in order to find you guilty?

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that if there were a trial, you would have the right to be represented by an attorney at trial and at all other stages of the proceeding, and if you couldn't afford one, a lawyer would be provided to you free of cost?

You understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that if there were a trial, you would have the right to see and to hear all of the witnesses against you, your lawyer could cross examine them, you would have the right to have your lawyer object to the government's evidence and to offer evidence on your behalf if you so desired, you would have the right to have witnesses required to come to court to testify in your defense, and you would have the right to testify yourself, but you would not be required to testify.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that if there were a

trial and you decided not to testify, no adverse inference could be drawn against you, and by that I mean the jury would be instructed that it could not assume that the reason you didn't testify was because you were guilty or because you were hiding something?

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that if you were convicted at trial, you would have the right to appeal from the jury's verdict?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand each and every one of these rights that I've summarized for you?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you have any question about any of these rights?

THE DEFENDANT: No, your Honor.

THE COURT: Do you understand that by entering a plea of guilty today, you will be giving up each and every one of these rights? You will be waiving these rights.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you also understand that by entering a plea of guilty today, you will be waiving any possible claim that your constitutional rights may have been

violated and you will not have a trial?

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that by entering a plea of guilty, you will also have to give up your right not to incriminate yourself because I will ask you questions later on in today's hearing about what it is that you did in order to satisfy myself that you are guilty as charged and you will have to admit and acknowledge your guilt.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that you can change your mind right now and refuse to enter a plea of guilty?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that you don't have to enter this plea if, for any reason, you don't wish to do so?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you wish to proceed?

THE DEFENDANT: Yes, your Honor.

THE COURT: You're charged, sir, in Count One of the indictment with conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h).

Is that your understanding?

THE DEFENDANT: Yes, your Honor.

THE COURT: And you're charged in Count Two of the

indictment with conspiracy to import cocaine, in violation of Title 21, United States Code, Section 963; is that your understanding?

THE DEFENDANT: Yes, your Honor.

THE COURT: Pursuant to the plea agreement, it's the Court's understanding that the government will accept a guilty plea to both of these counts.

Is that your understanding?

THE DEFENDANT: Yes, your Honor.

THE COURT: Let me pause for a moment and I'm going to ask the government to please state for the record the elements of each of the two charges against you. I'm going to ask you to listen carefully, please, sir, because I want to make sure you understand what it is the government would have to prove at trial if you did not enter a plea of guilty.

Okay. Let's take it one count at a time. Count One.

MS. ONG: Yes, your Honor. For Count One, the government would have to prove beyond a reasonable doubt that there was an agreement between two or more people to commit money laundering; and

Second, that the defendant knowingly and intentionally joined in the agreement with the intent to further its unlawful objective.

Here, the agreement was to violate Title 18, United States Code, Section 1956(a)(2)(B)(i).

That has three elements:

First, that the defendant knowingly transported, transmitted, or transferred a monetary instrument or funds from a place in the United States to or through a place outside of the United States, or to a place in the United States from or through a place outside of the United States;

Second, that the defendant knew that the monetary instruments or funds were the proceeds of some form of unlawful activity; and

Third, that the defendant knew that the transportation, transmission, or transfer was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.

THE COURT: And venue.

MS. ONG: In order to establish venue — and this goes for both Counts One and Two — the government would have to prove by a preponderance of the evidence that venue is proper here in the Southern District of New York. Here, there is evidence that Zuluaga Duque was first brought into the United States in connection with his arrest in the Southern District of New York.

THE COURT: Tell me again about the venue.

MS. ONG: Your Honor, venue is under Title 18, United States Code, Section 3238, commonly referred to as "first

brought." Here, the defendant was extradited from Colombia to the Westchester County Airport where he was arrested in connection with this case.

THE COURT: So what's relevant is the place to which he is extradited?

MS. ONG: It's the place he was first brought and arrested in the United States.

THE COURT: Both?

MS. ONG: Yes.

THE COURT: All right. So let me just pause counsel.

Mr. Zuluaga Duque, do you understand that if you did not plead guilty, the government would have to prove at trial each and every part of the charge in Count One beyond a reasonable doubt?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand what it is and you've talked with your lawyer about what it is that the government would have to prove?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Ms. Ong, would you state the elements of Count Two, please.

MS. ONG: Yes, your Honor.

Count Two is the conspiracy to import cocaine.

There are three elements:

First, that there was an agreement between two or more

people to violate the narcotics laws of the United States. Here, it's the importation of a controlled substance, which is cocaine, from a place outside of the United States into the United States; and second, the manufacture, possession with the intent to distribute, or distribution of cocaine with the knowledge or intent that some of the controlled substances would be unlawfully imported into the United States;

Second, that the defendant knowingly and intentionally joined in the agreement with the intent to further its unlawful objective; and

Third, that the offense involved 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine.

The government would also have to prove venue as to Count Two, which is the same as Count One.

THE COURT: Mr. Zuluaga Duque, do you understand that if you did not plead guilty and instead elected to go to trial, the government would have to prove at trial each and every element or part of the offense that counsel just outlined beyond a reasonable doubt?

THE DEFENDANT: Yes, your Honor.

THE COURT: And you understand what it is that the government would have to prove?

THE DEFENDANT: Yes, your Honor.

THE COURT: And you talked about the elements with

your lawyer?

THE DEFENDANT: Yes, your Honor.

THE COURT: Let's talk for a few minutes about the potential penalty for the offenses to which you tell me you intend to plead guilty.

Starting with Count One, do you understand that the maximum term of imprisonment for the offense in Count One is a term of imprisonment of 20 years?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that Count One can also include a maximum term of supervised release, after you're released from prison, of 3 years?

THE DEFENDANT: Yes, your Honor.

THE COURT: In addition to these restrictions on your liberty, the maximum possible punishment for Count One also includes certain financial penalties.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that the maximum fine allowed for Count One is $500,000, or twice the value of the monetary instruments or funds involved?

THE DEFENDANT: Yes, your Honor.

THE COURT: Give me one moment.

(Pause)

Do you understand that I must also impose a mandatory

$100 special assessment for Count One?

THE DEFENDANT: Yes, your Honor.

THE COURT: Ms. Ong, am I correct that the government is not seeking restitution?

MS. ONG: That's correct, your Honor.

THE COURT: Do you understand, sir, that the maximum possible term of imprisonment for the offense in Count Two to which you tell me you intend to plead guilty is a term of imprisonment of life?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that the offense in Count Two carries a mandatory minimum term of imprisonment of 10 years?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that Count Two can also include a maximum term of supervised release, after you're released from prison, of life, and a mandatory minimum term of supervised release of 5 years?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that in addition to these restrictions on your liberty, the maximum possible punishment for Count Two also includes certain financial penalties?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that the maximum fine

allowed for the offense in Count Two is $10 million, or twice the gross pecuniary gain relating to the offense, or twice the loss to people other than yourself as a result of the offense, whichever is greater?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that on this count, I also must impose a mandatory $100 special assessment?

THE DEFENDANT: Yes, your Honor.

THE COURT: Ms. Ong, the controlled substance involved here is cocaine only, correct?

MS. ONG: That's correct, your Honor.

THE COURT: So let me ask you a question, and Ms. Shellow, this is for you, as well. There is a provision at Title 21, United States Code, Section 960(b)(1)(B) that says, "if any person commits such a violation after a prior conviction of a serious drug felony has become final..." Then it goes on to talk about what the potential penalty and the potential fine is. As I understand it, this defendant has a prior heroin importation charge.

MS. ONG: Yes, your Honor.

THE COURT: Does this provision kick in or not?

MS. ONG: May I have one moment, your Honor?

THE COURT: Sure.

(Counsel conferred)

MS. ONG: Your Honor, our position is that those

provisions do not apply because the government did not file a prior felony information regarding the prior conviction.

THE COURT: I don't understand what that means. He was charged with that and convicted of that, right?

MS. ONG: That's correct, your Honor. Ordinarily, if our office is pursuing those enhancements, those enhanced statutory penalties, our office will file a prior felony information. If you look at Title 21, United States Code, Section 851.

THE COURT: Okay.

MS. ONG: So paragraph 1, your Honor, starts with "no person who stands convicted of an offense under this part..."

THE COURT: Right.

MS. ONG: And just reading through that, "shall be sentenced to increased punishments by reason of one or more prior convictions, unless before trial or before entry of a guilty plea, United States files an information with the court stating in writing the previous convictions to be relied upon."

THE COURT: Okay. I understand what you're saying.

Is this referring to an information in the sense of a charging document or is it just a statement?

MS. ONG: Your Honor, it's similar to a document that has to be filed on the docket to -- I don't want to repeat the word, it's an information that needs to be filed on the docket with this specific --

THE COURT: I appreciate it. I don't make any secret of the fact that I am not fully acknowledgeable, nobody is, of every element of criminal law. We came across this provision, and so I needed to understand why it's not applicable. Thank you.

Ms. Shellow, anything you want to add?

MS. SHELLOW: No, Ms. Ong just described it precisely correctly.

THE COURT: I appreciate it.

Mr. Zuluaga Duque, do you understand that you're pleading guilty to two different counts in the indictment containing two separate charges?

THE DEFENDANT: Yes, your Honor.

THE COURT: And you understand that you will be sentenced separately on each of these counts?

THE DEFENDANT: Yes, your Honor.

THE COURT: And you understand that I may order you to serve the sentences either concurrently, meaning at the same time, or consecutively, meaning one after the other?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that pursuant to your agreement with the government, you have agreed to forfeit to the United States a sum of money in the amount of $14,751,846 representing proceeds traceable to the commission of the offense in Count One to which you're pleading guilty?

Is that correct, is that Count One?

MS. ONG: Yes, your Honor, we're only seek forfeiture as to Count One.

THE COURT: Okay.

Do you understand that, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that that forfeiture amount will not reduce any fine, costs of imprisonment, or any other penalty that I might impose?

THE DEFENDANT: Yes, your Honor.

THE COURT: I've been given a copy of a proposed order of forfeiture, preliminary order of forfeiture as to specific property/money judgment, which I'm told is on consent.

Do you have a copy of that, Ms. Shellow?

MS. SHELLOW: I do, your Honor.

THE COURT: And did you have this translated?

MS. SHELLOW: I did, your Honor. I have put in front of Mr. Zuluaga Duque a copy of the Spanish version of the order.

THE COURT: Terrific.

Sir, have you reviewed this Spanish translation of the proposed order of forfeiture?

THE DEFENDANT: Yes, your Honor.

THE COURT: And have you discussed it with your lawyer?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that pursuant to the terms of this proposed order, if I sign it, you are consenting to the entry of a money judgment against you in the amount of $14,751,846 in U.S. currency?

THE DEFENDANT: Yes, your Honor.

THE COURT: And that represents the amount of property involved in the offense charged in Count One?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that that you are also forfeiting any interest or right that you may have in certain property identified in this proposed order and labeled as "specific property"?

THE DEFENDANT: Yes, your Honor.

THE COURT: And that property is listed -- I don't know how it follows on your translation.

Ms. Shellow, I don't know how it follows on your translation. On my version, it's on the second page.

MS. SHELLOW: It is also on the second page in the Spanish version, your Honor.

THE COURT: And you see, sir, that there are four different items of specific property that are listed? They're all contained in wallets which are identified by very long identification series of numbers and letters?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. And do you in fact consent to entry of a money judgment against you in the amount that we just talked about, $14,751,846?

THE DEFENDANT: Yes, your Honor.

THE COURT: And you agree that that represents the amount of property involved in the offense charged in Count One of the indictment?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you also agree to forfeit any right, title, or interest that you might have in the specific property, those four wallets that are listed on the second page of this proposed order?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that this order to forfeit specific property and for the entry of a money judgment against you will be final with respect to you once I enter it?

THE DEFENDANT: Yes, your Honor.

THE COURT: And you understand that this order of forfeiture will become part of the sentence against you and included in the judgment of conviction that is entered after I impose sentence?

THE DEFENDANT: Yes, your Honor.

THE COURT: And have you signed this proposed preliminary order of forfeiture?

THE DEFENDANT: Yes, your Honor.

THE COURT: And did you sign it earlier today?

THE DEFENDANT: Yes, your Honor.

THE COURT: And you carefully reviewed this order with your lawyer before you signed it, correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you in fact consent to entry of this consent preliminary order of forfeiture as to specific property/money judgment?

THE DEFENDANT: Yes, your Honor.

THE COURT: I will enter this order at the conclusion of today's hearing. And as I say, sir, it will be part of the judgment against you in this case.

So let me talk to you now about the supervised release aspect of your potential penalty.

Supervised release means that when you are released from prison, you will be subject to monitoring for a stated period of time. During that period of time, certain terms and conditions will be imposed on you. If you violate any of those terms and conditions, you can be reimprisoned without a jury trial.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that in this case, if you're on supervised release and you don't comply with any of the set terms and conditions, you can be returned to prison for

up to 5 years and you'll be given no credit for the time you spent in prison as a result of your sentence, and you'll be given no credit for any time that you spent on supervised release prior to the violation?

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: You should understand that there is no parole in the federal system. If you are sentenced to prison, you will not be released early on parole. There's a limited opportunity to earn credit for good behavior, but you would have to serve at least 85 percent of the time to which you are sentenced, and then there may or there may not be other opportunities for early release under what's known as the First Step Act.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that if I accept your guilty plea and adjudge you guilty, that adjudication may deprive you of certain valuable civil rights, including the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm if you currently have or could otherwise attain such rights?

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Let me just pause and ask.

Is there anything we need to discuss, counsel?

MS. ONG: No, your Honor.

THE COURT: You've told me, sir, that you are not a United States citizen, correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that as a result of your guilty plea, it's very likely then that your removal from the United States will be mandatory and that, at a minimum, you risk being removed or suffering other adverse immigration consequences?

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand, for example, you could be denied citizenship in the future and you could be denied admission back to the United States in the future?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did you discuss possible immigration consequences of your plea with your lawyer?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that if I accept a guilty plea from you today, you will not be allowed to withdraw that plea for any reason, including possible immigration consequences of that plea, and that's regardless of any advice that you may have received from anyone about immigration consequences of your plea?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you wish to plead guilty, regardless of any immigration consequences that may flow from that plea?

THE DEFENDANT: Yes, your Honor.

THE COURT: Let's talk for a few minutes about sentencing.

Do you understand that under current laws, there are sentencing guidelines that judges must consider in determining an appropriate sentence?

THE DEFENDANT: Yes, your Honor.

THE COURT: Has your lawyer explained to you about the sentencing guidelines and how they operate?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that in addition to considering the sentencing guidelines, there are a number of factors that have been laid out by our Congress in a statute at 18, United States Code, Section 3553 that I must consider in determining what an appropriate sentence is?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that I have discretion, while taking the sentencing guidelines into account, to sentence you to any period of imprisonment of up to life?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that even though the plea agreement that you entered into with the government

includes a stipulated or agreed upon sentencing guideline calculation, I can't determine your sentence until after a presentence report has been completed by the probation department, and you and the government have a chance to challenge any of the facts reported by the probation office?

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: I don't believe that I've previously put on the record the details about the plea agreement, which has been provided to me.

I have a letter on the letterhead of the United States Department of Justice, the U.S. Attorney for the Southern District of New York, by email to Jill Shellow, In re United States v. De Jesus Zuluaga Duque, S7 24 Cr. 133 (MKV). It's an 8-page letter. That is my understanding that this is the agreement between the parties; is that correct, Ms. Ong?

MS. ONG: Yes, your Honor.

THE COURT: Ms. Shellow.

MS. SHELLOW: That is correct, your Honor.

THE COURT: So this plea agreement will be part of the record as Government Exhibit 1.

Do you understand, sir, that according to the plea agreement, you have agreed, or stipulated with the government, that the guidelines range appropriate to the offense in Count One to which you intend to plead guilty is 262 to 327 months of

incarceration, with a mandatory minimum of 120 months, and that the applicable fine range for your case is $50,000 to $500,000, and that's for the offenses in Counts One and Two?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that even though you haven't specifically stipulated to it, the applicable term of supervised release is 5 years to life?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that this stipulation doesn't bind the Court and it doesn't bind the probation department as to the facts on which it's based, how to apply the sentencing guidelines to the facts, or what will be an appropriate sentence in your case?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that I may decide to impose a sentence outside the guidelines range?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that if your lawyer or anyone else has attempted to estimate or predict for you what your sentence will be, that estimate or prediction might well be wrong?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that no one, not your lawyer and not the government or its lawyers can or should give you any assurance as to what your sentence will be since that

sentence can't be determined until after the probation office prepares a report and I've ruled on any challenges to that report and I've determined what the appropriate sentence is?

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you also fully understand that you'll be bound by your guilty plea if I accept it today, and you will not be allowed to withdraw your plea of guilty for any reason, including if your sentence is different from what your lawyer or anyone else told you it might be, if it's different from what you're expecting, or if you're surprised or disappointed by your sentence?

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that you'll be bound by your guilty plea and you will not be allowed to withdraw it, even if the government doesn't oppose or take a position on what your lawyer will ask me to impose as your sentence?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that I'm obligated to impose whatever sentence I believe is appropriate under the circumstances and the applicable law?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that you may have the right to appeal your sentence under certain circumstances, even

if your plea agreement provides that you're waiving your right to appeal?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are you now serving any other sentence, federal, state, local municipalities here in the United States or anywhere else?

THE DEFENDANT: No, your Honor.

THE COURT: Are you being prosecuted for any crimes other than those which bring us here today?

THE DEFENDANT: No, your Honor.

THE COURT: So let's talk about the plea agreement, which, as I just described on the record what it is --

MS. ONG: Your Honor, may I have one moment to talk to counsel?

THE COURT: Yes.

(Counsel conferred)

MS. SHELLOW: If we can have a moment, your Honor.

THE COURT: Yes. You have a moment.

(Counsel and defendant conferred)

MS. SHELLOW: Your Honor, a matter of clarification, please.

THE COURT: Give me one moment.

(Pause)

Okay. Go ahead.

MS. SHELLOW: Your Honor, I call to your attention

that apparently in 2012, approximately, 2013, I'm advised, Mr. Zuluaga Duque was charged by indictment in the Southern District of Florida under case number 13-20295-CR-JEM.

THE COURT: M like Mary?

MS. SHELLOW: M like Mary.

He's not being prosecuted in the United States for this because he was not extradited for that indictment, but it remains pending and open.

THE COURT: Okay. Thank you.

MS. SHELLOW: You're welcome.

THE COURT: So I guess I should ask the government what, if anything, I'm supposed to make of this.

MR. PALMA: Your Honor, there is an issue with the client. Can we just speak with him for a moment?

THE COURT: Sure.

(Counsel and defendant conferred)

MS. SHELLOW: Thank you, your Honor. I believe we've cleared it up.

THE COURT: All right. Is there anything you need to put on the record?

MS. SHELLOW: No, your Honor. Thank you.

THE COURT: All right. So, Ms. Ong, what am I supposed to make of this new information?

MS. ONG: Your Honor, we were providing that information to make sure that your Honor has a complete record.

And just to clarify, given the question that your Honor asked, we can't confirm that our understanding is that Mr. Zuluaga Duque was only extradited on this indictment and not the Southern District of Florida indictment, and we do not believe that indictment has any impact on the proceedings here.

THE COURT: Okay. Thank you.

All right. Mr. Zuluaga Duque, I started to direct your attention to the actual plea agreement, the document that you signed with the government.

Do you have it there in front of you?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. And I believe, Ms. Shellow, you told me you had this translated into Spanish?

MS. SHELLOW: I did, your Honor.

THE COURT: Sir, did you review the Spanish translation of this letter agreement?

THE DEFENDANT: Yes, your Honor.

THE COURT: And did you sign this agreement on the last page above where your name is typed and below where it says "agreed and consented to"?

THE DEFENDANT: Yes, your Honor.

THE COURT: And when did you sign this?

THE DEFENDANT: May 6th.

THE COURT: Before you signed this letter agreement, did you discuss with your lawyers what it says?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did they explain to you all of the terms and conditions of this letter agreement?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did you fully understand the agreement before you signed?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you have any questions, as you sit here today, about the agreement?

THE DEFENDANT: No, your Honor.

THE COURT: Do you understand that the agreement provides that you're giving up or waiving your right to appeal, or to litigate or challenge your conviction under statutes at 28, United States Code, Section 2255 and/or 2241 — those are statutes that we refer to as the habeas corpus statutes — or under any other provision on any basis?

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that by this waiver, you're giving up your right to challenge your conviction, among any other grounds, on the basis of any non-jurisdictional defect in the proceedings before entry of your plea?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand by this waiver, you're giving up your right to challenge your conviction on the basis

of any claim that any statute under which you intend to plea is unconstitutional?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that by this waiver, you're giving up your right to challenge your conviction on the basis that the conduct which you intend to admit doesn't fall under the relevant statute?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand you're under no obligation to waive your right to appeal or to otherwise litigate your conviction?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that this agreement provides that you're giving up or waiving your right to appeal, or to litigate or challenge your sentence under the habeas corpus statutes that I mentioned, or on any other basis if I sentence you within or below the guidelines range that you've stipulated to in this plea agreement?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that this waiver applies regardless of whether your sentence is concurrent or consecutive to any other sentence that may be imposed on you, and whether the sentence I impose for each of the charges is concurrent to the other sentence on the other charge or consecutive to the sentence on the other charge?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand the waiver applies whether or not I use the same calculation and analysis in calculating the appropriate sentence and guidelines range that's set forth in this agreement?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that any appeal that isn't foreclosed by this waiver would still have to be limited to the portion of the sentencing calculation that is inconsistent with or not addressed by this agreement?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that you're under no obligation to waive your rights to appeal or to otherwise litigate your sentence?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that you are waiving your right to appeal or litigate or challenge any term of supervised release that is less than or equal to the statutory maximum?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that you're waiving your right to appeal or to litigate or challenge any condition of supervised release that I might impose as long as you have notice of that condition, including notice set forth in a recommendation by the probation office in the presentence

report, and you have an opportunity to object to the condition imposed?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that you're under no obligation to waive your right to appeal or to otherwise litigate or challenge your term or the conditions of supervised release?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that the agreement provides that you're waiving any right to appeal or attack your conviction on the basis that the government hasn't provided you with discovery material, exculpatory material, except information establishing factual innocence or any material to impeach the government's witnesses against you?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that you're under no obligation to waive those rights?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that the agreement provides that you're waiving any appeal or challenge to a fine of any amount imposed that is less than or equal to $500,000?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that the plea agreement provides that you're waiving any appeal of or challenge to a forfeiture order of any amount less than or

equal to $14,751,846?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that you're waiving any right to appeal or to challenge any special assessment less than or equal to the amount of $100 per count?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that you're under no obligation to make these waivers with respect to potential financial penalties?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that your agreement provides that will you not move for a downward departure under the sentencing guidelines or seek any adjustment under the guidelines not described in the plea agreement, but that you may make arguments for a lower sentence under the general sentencing statute that I talked to you about earlier, known as Section 3553(a)?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that the government likewise can argue for a higher sentence based on the factors set forth in that statute?

THE DEFENDANT: Yes, your Honor.

THE COURT: And you understand that each of you and the government can make arguments about where within the stipulated guidelines range you should be sentenced?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand you're under no obligation to enter into such an agreement?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that the plea agreement provides that you're waiving any challenge to your guilty plea, your conviction, or your sentence based on any immigration consequences of your plea, regardless of any advice that you may have received about immigration consequences?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand you're under no obligation to make this waiver?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that the plea agreement doesn't bind any federal, state, or local prosecuting attorney, or any other prosecuting authority, other than the Southern District of New York?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that the government reserves the right to seek an adjusted sentence outside the range to which you've stipulated if it determines that your criminal history category is not appropriately calculated as category II, or that you qualify as a career offender?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that the government

has also reserved its right to seek an adjusted sentence outside the range to which you've stipulated if it determines that you have inadequately accepted responsibility?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that the government reserves the right to seek an adjusted sentence outside the range to which you've stipulated if it determines that you obstructed justice or that you committed any other crime?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that if your conviction is vacated for any reason, you have agreed that any prosecution that wasn't time barred by the statute of limitations when you signed this agreement may be commenced or reinstated against you?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you waive any statute-of-limitations defense with respect to any such prosecution?

THE DEFENDANT: Yes, your Honor.

THE COURT: Does this agreement reflect accurately your complete and total understanding of the entire agreement between the government and its lawyers, and you and your lawyer?

THE DEFENDANT: Yes, your Honor.

THE COURT: Give me one moment, please.

(Pause)

Let me just ask counsel, there is reference in this agreement, specifically I'm looking at pages 4 and 7, to any written proffer agreements, right?

MS. SHELLOW: Your Honor, there is such language in the agreement. There are no written proffer agreements.

THE COURT: Okay. Sir, is everything that you understand about your plea and your sentence, insofar as you've agreed to things with the government, covered by this agreement?

THE DEFENDANT: Yes, your Honor.

THE COURT: Is there anything about your agreement with the government that has been left out of this written agreement that I'm calling Government Exhibit 1?

THE DEFENDANT: No, ma'am.

THE COURT: Apart from what's contained in the plea agreement, have any promises been made to you in order to get you to plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: Have you been threatened in any way to get you to plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: Have you been coerced in any way in order to get you to plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: Knowing everything that we've talked about

up to this point, do you still wish to plead guilty pursuant to this agreement?

THE DEFENDANT: Yes, your Honor.

THE COURT: Counsel, do you know of any valid reason why your client would prevail at trial or should not be permitted to enter a plea of guilty?

MS. SHELLOW: I know of no reason. Thank you, your Honor.

THE COURT: Let me ask the government to please summarize for me the evidence that it would present at trial if the defendant did not plead guilty.

MS. ONG: If this case were to proceed to trial, the government expects to introduce the following evidence, among other evidence, which would prove the defendant guilty beyond a reasonable doubt of the charged offenses: Photos, documents, and other materials from phones and iClouds seized from or used by the defendant and his coconspirators, including, among other things, photos of messages between the defendant and his codefendant, photos of large amounts of cash, photos of large Tether transfer confirmations, including to other wallets used by a cooperating witness who are the defendant's coconspirators in the network; ledgers showing the defendant received 50 percent of the profits from the laundering; and photos of serial numbers of currency, witness testimony that currency serial numbers are often used by those who do bulk and cash

pickups associated with drug trafficking and are referred to as "tokens"; witness testimony regarding meetings and audio recordings of those meetings and video recordings of some of those meetings involving the defendant and his coconspirators discussing laundering with the network, including, among other things, the defendant and his son explaining the connection between drug trafficking and Tether or cash that's laundered through the network; the defendant's postarrest statement; witness testimony, audio messages, text messages, and recorded phone calls between the defendant's coconspirators; and a cooperating witness showing, among other things, the money laundering operation with the network, including that Tether was converted to U.S. dollars; a wire from the U.S. to Colombia, among other places, and withdrawn as Colombian pesos; the defendant's role in the network, including that he was a boss; and that the defendant's group or cell in the network was robbed in June 2023 and, as a result, the defendant and his coconspirators subsequently threatened a currier, a cooperating witness, and the cooperating witness's mother; financial records between May and November 2023 showing Tether transactions and U.S. dollar wires from the U.S. to Colombia; and text messages with threats to the cooperating witness and the cooperating witness's mother on behalf of the defendant and his codefendant to seek repayment of the debt; recorded conversations between cooperating witnesses, law enforcement

sources, and the defendant's coconspirators between October and November 2023 to arrange for the sale or delivery of 9 kilograms of cocaine paste which was intended to be shipped as cocaine to New York; recorded phone calls between the defendant's coconspirator and a cooperating witness that the defendant tried to help his coconspirators find a buyer for the drugs, the cocaine; the defendant agreed to receive Tether for the drugs which he would then convert to Colombian pesos and the defendant did in fact receive the Tether and provide his coconspirators with Colombian pesos; testimony and financial records showing a wallet used by the defendant received the payment for the cocaine and that he received a fee for helping to facilitate the drug deal; law enforcement testimony regarding the drug deal, surveillance of that drug deal, and meetings leading up to the drug deal; lab tests showing that the substances tested positive for the presence of cocaine and the seized narcotics; and as I mentioned earlier, there will also be law enforcement testimony about the defendant being flown to Westchester County where he was arrested.

All of this would show beyond a reasonable doubt that between May and November of 2023, the defendant conspired to commit money laundering, and between October 2023 and February 2024, the defendant conspired to import cocaine into New York.

THE COURT: Thank you.

Sir, now that we've talked about the agreement you've

entered into with the government, the potential penalties for the counts to which you tell me you intend to plead guilty, are you prepared to enter a plea and tell me what it is that you did that makes you guilty of the offenses with which you've been charged?

THE DEFENDANT: Yes, your Honor.

THE COURT: So let's take it one count at a time, please.

With respect to Count One, would you tell me what it is that you did that makes you guilty of the crime of conspiracy to commit money laundering.

I'm going to just remind you to please speak slowly because I need to understand what you're saying and the court reporter is taking down and the translator has to have time to translate what you're telling us.

MS. SHELLOW: Your Honor, in anticipation, Mr. Zuluaga and I have worked on a written statement, and he would like permission to be able to read the statement. He's reading it obviously in Spanish and the interpreters will interpret it into English.

THE COURT: That's fine in the first instance. I may have questions, but that's fine.

MS. SHELLOW: Thank you.

THE DEFENDANT: As to Count One, from about May to November 2023, I agreed with others to violate the money

laundering laws of the United States. Specifically, while living in Medellin, Colombia, I involved myself in a series of financial transactions in which I bought Tether, a form of cryptocurrency, with Colombian pesos knowing, or having reason to believe, that the Tether represented the proceeds of illegal narcotics transactions. These transactions generally occurred as follows:

MS. SHELLOW: Your Honor, would you like an English copy of what he is reading?

THE COURT: Sure.

MS. SHELLOW: I've tendered a copy to the government.

THE COURT: That would be helpful. Thank you.

MS. SHELLOW: You're welcome.

THE COURT: Let me just ask our interpreter, you were listening as he spoke in Spanish, right?

THE INTERPRETER: Of course, your Honor.

THE COURT: And so what you're saying to me, you've confirmed, is in fact what he said to you in Spanish, what he said on the record in Spanish?

THE INTERPRETER: Of course, your Honor.

THE COURT: Okay. Thank you.

THE DEFENDANT: First, either I, or one of my coconspirators, would communicate with people who were selling Tether on messaging platforms like WhatsApp. Then, the price for the Tether was negotiated. Once there was an agreed upon

purchase price for the Tether and I confirmed that the Tether had been deposited into a cryptocurrency wallet that I controlled, either I or one of my coconspirators would personally deliver Colombian pesos to the seller of the Tether at an agreed upon location in Medellin. A coconspirator then transferred the Tether to the United States where it was converted into U.S. dollars. After the Tether was converted to dollars, I was paid a commission in Colombian pesos for my services. These transactions were designed to conceal the true owners of the Tether which was generated from narcotics trafficking. I purchased approximately $14.5 million in Tether during this time.

THE COURT: Let me just ask you a couple of followup questions.

That's the end of your statement with respect to Count One, right?

THE DEFENDANT: That's correct, yes.

THE COURT: All right. So at the time you agreed with others to violate the money laundering laws of the United States, did you understand that that's the purpose of what you were doing, was in fact to evade and violate the laundering laws of the United States?

THE DEFENDANT: Yes, your Honor.

THE COURT: And did you enter into that agreement voluntarily?

THE DEFENDANT: Yes, your Honor.

THE COURT: And you knew about what the purpose of this whole scheme was, right?

THE DEFENDANT: Yes, your Honor.

THE COURT: And when you did what you just described to me, did you know that what you were doing was wrong?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did you know that what you were doing was illegal?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you admit the forfeiture allegations with respect to Count One?

THE DEFENDANT: Yes, your Honor.

THE COURT: Does the government wish any further factual matters to be addressed in connection with the defendant's allocution to Count One?

MS. ONG: Your Honor, just as to venue.

THE COURT: Yes.

Sir, can you tell me about how it is that you came to be in the United States to face charges.

MS. SHELLOW: Your Honor, we will stipulate that when Mr. Zuluaga arrived in the United States, the first point of entry into the United States was the Westchester County Airport, which is in the Southern District of New York.

THE COURT: And you stipulate that he was arrested at

that time?

MS. SHELLOW: We stipulate he was arrested at that time.

THE COURT: Do you stipulate that venue is proper in the Southern District of New York with respect to both Counts One and Two?

MS. SHELLOW: I do, your Honor. We do, your Honor.

THE COURT: Thank you.

Is there anything further, Ms. Ong, that you think I should address in connection with the allocution to Count One?

MS. ONG: No, your Honor.

THE COURT: Thank you.

All right, sir, let's turn to Count Two then. Can you please tell me what it is that you did that makes you guilty of the crime charged in Count Two, conspiracy to import cocaine.

THE DEFENDANT: As far as Count Two, from around October 2023 to February 2024, I agreed with others to import into the United States 5 kilograms of cocaine from Colombia, knowing that cocaine is a controlled substance in the United States. Specifically, I agreed to let my coconspirators use my cryptocurrency wallet to deposit Tether, knowing that I was enabling my coconspirators to complete a drug transaction when I knew, or had reason to know, that the ultimate destination of the cocaine was the United States.

When I agreed to participate in these activities, I

knew what I was doing and I did so voluntarily. No one forced me. I knew what I was doing was wrong and against the law. I accept responsibility for my conduct, and I am sorry.

One more thing. As part of my plea agreement, I have agreed to forfeit to the United States $14,751,846 in money and/or property because this is the amount of Tether that I bought.

THE COURT: All right. With respect to Count Two, let me just ask you, when you entered into this agreement to import 5 kilograms or more of cocaine from Colombia into the United States, did you understand when you entered the agreement what it was that you were going to be doing?

THE DEFENDANT: Yes, your Honor.

THE COURT: Tell me what it is you understood what you were going to be doing.

THE DEFENDANT: To import drug -- cocaine to the United States.

THE COURT: And you understood that importing cocaine into the United States was illegal, right?

THE DEFENDANT: Yes, your Honor.

THE COURT: And you understood that it was against the law and it was wrong?

THE DEFENDANT: Yes, your Honor.

THE COURT: And you entered into that agreement to do this voluntarily, right?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. At the end of this statement that you read into the record, you said you knew what you were doing, you did it voluntarily, no one forced you, I knew what I was doing was wrong and against the law. Does that apply with respect to both Count Two as well as Count One?

THE DEFENDANT: Yes, your Honor.

THE COURT: Is there anything further that the government wishes me to explore with respect to the allocution regarding Count Two?

MS. ONG: No, your Honor.

THE COURT: Is there an adequate factual basis, Ms. Ong, to support a plea of guilty by the defendant to the charges in Counts One and Two?

MS. ONG: Yes, your Honor.

THE COURT: Ms. Shellow, is there an adequate factual basis to support a plea of guilty by Mr. Zuluaga Duque to the charge in Count One, charging him with conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h)?

MS. SHELLOW: Yes, your Honor.

THE COURT: Is there an adequate factual basis to support a plea of guilty by Mr. Zuluaga Duque to the charge in Count Two, charging him with conspiracy to import cocaine, in violation of Title 21, United States Code, Section 963?

MS. SHELLOW: Yes, your Honor.

THE COURT: Sir, now that we've talked about your plea agreement, possible penalties for the crime to which you tell me you intend to plead guilty, we can turn to formal entry of a plea.

Do you wish to proceed?

THE DEFENDANT: Yes, your Honor.

THE COURT: Would you please stand.

Mr. Zuluaga Duque, how do you plead to the charge in Count One, conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h)?

THE DEFENDANT: Guilty.

THE COURT: How do you plead with respect to the charge against you in Count Two, conspiracy to import cocaine, in violation of Title 21, United States Code, Section 963?

THE DEFENDANT: Guilty.

THE COURT: Are you pleading guilty because you are in fact guilty?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are you pleading guilty voluntarily?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are you doing so of your own free will?

THE DEFENDANT: Yes, your Honor.

THE COURT: Ms. Shellow, are there any other questions that you believe I should ask your client in connection with

his plea?

MS. SHELLOW: No, I think you've covered all of it. Thank you, your Honor.

THE COURT: Ms. Ong, are there any other questions you believe I should ask in connection with this plea?

MS. ONG: No, your Honor. Thank you.

THE COURT: Mr. Zuluaga Duque, you've acknowledged that you are in fact guilty as charged in Counts One and Two of the S7 superseding indictment, charging you with conspiracy to commit money laundering and conspiracy to import cocaine. Because I am satisfied that you know your rights, including your right to go to trial, and you're waiving them voluntarily, and that you're aware of the consequences of your plea, including the sentence that may be imposed, I do find that your plea is entered knowingly and voluntarily and is supported by an independent basis in fact containing each of the essential elements of the offenses. I therefore accept your guilty plea and I enter a judgment of guilty on Counts One and Two of the S7 indictment.

You may be seated, sir.

Let me, before we adjourn, just describe to you, Mr. Zuluaga Duque, what the process will be going forward.

As I said a few minutes ago when we were talking, the probation office will prepare a presentence report that assists me in determining an appropriate sentence in this case. In

order to prepare that report, the probation office needs to interview you. It's very important that the information that you give to the probation officer be truthful and it be accurate. That report is very important to me in the decision about what your sentence will be. Once the report is prepared, it will be made available to you and to the government through your respective lawyers in a draft form. You have the right to review that report with your lawyer, to provide any comments about it, to discuss it with her, to raise with her anything to which you object. Sometimes the probation office revises reports to include additional information that you want included or it might make revisions in the report if it believes that the evidence warrants it. If it doesn't revise the report and you still have an objection, I would have to rule on those objections before you're sentenced. At the time of sentencing, you have the opportunity to speak on your own behalf to the Court if you wish to do so, but you're not obligated to do that.

Now, Ms. Shellow and Mr. Palma, I assume one or both of you wish to be present when the defendant is interviewed by probation?

MS. SHELLOW: Absolutely, your Honor.

MR. PALMA: That's correct.

THE COURT: I do order that no interview take place unless counsel is present.

Counsel, please reach out to the probation office within next two weeks to schedule the interview of Mr. Zuluaga Duque.

Ms. Ong, please, during that same two-week period, give the probation office the statement of facts that it needs in connection with the report.

I remind both sides to please give any comments to the probation office in a timely manner. Courtesy copies are provided to chambers. Any submissions by the defense with respect to sentencing are due two weeks before sentencing, and any submissions by the government are due one week before sentencing.

Now, I was given a note that counsel are available for sentencing on August 19th. Yes?

MS. ONG: I don't believe we provided that note, but we can --

THE COURT: Ms. Dempsey.

THE DEPUTY CLERK: No, defense counsel.

MS. ONG: Defense counsel, I understand, provided that note.

One moment, your Honor.

THE COURT: Oh, you were not consulted.

MS. ONG: August 19th works for the government, your Honor.

THE COURT: So August 19th at 11:30 then. Sentencing

is set.

So, sir, I just remind you again that failure to be truthful with the probation office or with the Court could have an adverse effect on your sentence, could subject you to further prosecution, but I also reserve the right to deny you the two-level reduction in the calculation of your offense level under the sentencing guidelines if you don't cooperate fully with the probation office in connection with preparation of your sentencing report.

Do you understand?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Is there anything further?

MS. ONG: Nothing from the government, your Honor.

MS. SHELLOW: No, your Honor. Thank you.

THE COURT: All right. I just ask the parties to please order a copy of the transcript of today's hearing. I do carefully go back and review my conversation in particular with the defendant as I'm preparing for sentencing.

I thank our court reporter very much, thank you to the marshals, and thank you to our interpreters.

We're adjourned.

* * *